Richmond.

## VIRGINIAN RAILWAY COMPANY V. AVIS.

### March 13, 1919.

1. DEEDS—*Restrictive Covenants—Construction—Deed to Railroad for Depot Purposes—Case at Bar.*—In the instant case complainant, being the owner of all the land on both sides of the right of way of defendant railroad company at a station, conveyed to the company two small parcels of land on opposite sides of the railroad tracks at that point. The deed expressed a consideration of $1.00 and there was incorporated therein, after the granting clause, this sentence: "The above granted land is to be used for depot purposes and facilities connected therewith." The deed was prepared by the railway company, and, as originally drafted, did not contain the last-mentioned provision. Complainant refused to sign it in that form, and the sentence quoted above was either inserted by him or by the company at his direction. On one of the parcels conveyed the company erected and maintained a passenger and freight depot and leased a portion of the other parcel to a third party, who erected thereon a warehouse, a storehouse, a shed and cotton-gin. This lessee in the storehouse conducted a general merchandise business similar to that in which complainant was engaged.

   *Held:* That the company under the deed could only use the land conveyed for a depot and facilities connected therewith, and a decree enjoining the lessee and the railroad company from using the land for purposes other than depot purposes and facilities connected therewith, was not erroneous.

2. CONTRACTS—*Construction—Object—Language Given Its Ordinary Meaning.*—The purpose of all written contracts and conveyances is to say what the parties mean; and the only legitimate or permissible object of interpreting them is to determine the meaning of what the parties have said therein. In doing this, the language used is to be taken in its ordinary signification, unless it has acquired a peculiar meaning with reference to the subject matter, or unless the context plainly shows that such language is used in some other peculiar sense. If, when so read, the meaning is plain, the instrument must be given effect accordingly. These propositions are familiar and

elementary, and they embody the fundamental rule of construction to which all others are subordinate and subservient.

3. CONTRACTS—*Construction—Court Placing Itself in Situation of the Parties.*—If the contract is so drawn and expressed as to render the meaning of the whole, or any part of the instrument, ambiguous, then unless the parties themselves have, by their subsequent unequivocal conduct, placed a practical construction upon their language, the auxiliary or subordinate rule to be first applied, and the one of most usefulness and importance, is for the court to place itself as nearly as possible in the situation of the parties at the time of the execution of the instrument, and to consider the facts and circumstances attending the same, including, in particular, the relations of the parties, the nature and situation of the subject matter, the negotiations leading up to, and the apparent purpose of the transaction.

4. DEEDS—*Conveyance for Depot Purposes—Construction—Case at Bar.*—A conveyance of land to a railway company, "to be used for depot purposes and facilities connected therewith," if taken upon its face and given its primary and most apt and natural meaning, immediately conveys the thought that the company will be expected to use at least a part of the land for a depot, and the residue for facilities connected therewith; and to say that it means that the company will only use such part as it needs for a depot and incidental facilities, and may lease the residue to outsiders for business purposes wholly apart from its passenger and freight operations, is to say something which the parties did not say, and to ascribe a meaning to their words which comes as a second thought, and finds its support, not in the words used, but in a refinement of construction based upon secondary and inapplicable rules of interpretation.

5. DEEDS.—*Construction—Deed Poll.*—The general rule that the language in a deed poll must be constructed most strongly against the grantor is not favored, and is generally said to be one of last resort when all other rules of construction have failed. It is never to be resorted to unless the language involved can be said to be ambiguous.

6. COVENANTS—*Restrictive Covenants Not Favored.*—Although restrictive covenants, like all other impediments to the free alienation of real estate, are not favored, this simply means that all doubts are to be resolved in favor of the free alienation of real estate. The rule does not operate when there is no room for doubt as to the intention of the parties.

7. COVENANTS—*Restrictive Covenants—Validity.*—It is well settled that where the grantor has clearly restricted the use of the land granted, and the restriction itself is not illegal, the cove-

nant creates a trust which, in a proper case, courts of equity will enforce by means of an injunction against an inconsistent use.

8. DEEDS.—*Construction—Reading Language Into Deed.*—It is true that courts cannot read into contracts and conveyances language which will add to or take from the meaning of the words already contained therein. But there are more ways than one of expressing an idea clearly, and the language of the decree of the circuit court, declaring that "it was the intention and agreement of the grantors and grantee in the deed that the land therein conveyed should be used only for depot purposes and facilities connected therewith," was simply another and more emphatic way of stating the already clear import of a provision in a deed that "the above granted land is to be used for depot purposes and facilities connected therewith."

Appeal from a decree of the Circuit Court of Isle of Wight county. Decree for complainant. Defendants appeal.

*Affirmed.*

The opinion states the case.

*Loyall, Taylor & White, G. A. Wingfield* and *Hugh L. Holland,* for the appellants.

*Jno. N. Sebrell, Jr.,* for the appellee.

KELLY, J., delivered the opinion of the court.

[1]    James E. Avis, being the owner of all the land on both sides of the right of way of the Virginian Railway Company at what is now Colosse station, conveyed to that company two small parcels of land on opposite sides of the railroad tracks at that point, containing, respectively, sixty-five hundredths of an acre and ninety-two hundredths of an acre. The deed expressed a consideration of $1.00, and there was incorporated therein, after the granting clause, this sentence: "The above granted land is to be used for

90

depot purposes and facilities connected therewith." The deed was prepared by the railway company, and, as originally drafted, did not contain the last mentioned provision. Avis refused to sign it in that form, and the sentence quoted above was either inserted by him or by the company at his direction. This fact does not appear in the record, but is admitted by counsel for the company.

Avis conducts a mercantile business in a storehouse owned by him and located on his own land at Colosse.

On the larger of the two parcels conveyed to it, the company has erected and maintained a passenger and freight depot of the class used by it at other similar stations on its line, ample for the present needs of itself and the public, and intends to provide more comodious freight and passenger facilities there if they should hereafter be necessary.

The company leased to Henry Darden, under a contract which can be canceled at any time, a portion of the smaller parcel, and he has erected thereon a warehouse, a storehouse, a shed and cotton-gin, and is using the same for his personal benefit and profit. In the storehouse he conducts a general merchandise business similar to that in which Avis is engaged.

This suit in equity was brought by Avis against the company and Henry Darden, alleging, in substance, the facts stated above, claiming that "it was made a condition of the said grant that the said property should be used for depot purposes and facilities connected therewith," and "was the true intent and meaning of said conveyance that the property should be used for depot purposes only, and that when it should cease to be used for such purposes or was not used for such purposes, it should revert to the grantor;" and praying that the company and Darden be enjoined from the use of the property otherwise than for depot purposes and facilities connected therewith; that the land be declared to have reverted to Avis, and that the defendants be required

to pay him proper damages for their unauthorized use of the premises.

The cause was heard upon the bill, the deed filed therewith as an exhibit, the separate demurrers and answers of the defendants, and an agreed statement of facts (from which the facts above recited appear) ; and thereupon the circuit court rendered a decree which, in its material parts, was as follows: "And the court, overruling the demurrer and being of opinion that it was the intention and agreement of the grantors and grantee in the deed  * *  * that the land therein conveyed should be used only for (depot)· purposes and facilities connected therewith, and that particularly it was not the intention and agreement of the parties, as contained in the deed, that the said property should be used by the said railroad for the purpose of erecting thereon storehouses, warehouses, cotton-gins, etc., to be rented out to private individuals, to be operated in competition with the grantor in said deed, the court doth adjudge, order and decree that the Virginian Railway Company and Henry Darden, their agents, officers and employees, and all other persons, be forever restrained and enjoined from using, for purposes other than depot purposes and facilities connected therewith," the two parcels of land conveyed by Avis to the company.

Error is assigned to the action of the court (1) in overruling the demurrers, and (2) in decreeing upon the merits in the manner above set out.

· Both assignments present practically the same question. Although the bill charges that the language of the deed referring to the use of the land constituted a condition subsequent, for breach of which the land would revert to the grantor, the circuit court did not so decide, and no such contention is made before us. All the parties now agree that the provision is a covenant and not a condition; and the controversy here is as to the construction and effect of

the covenant. The appellee contends that it is restrictive in its nature, and limits the use of the land exclusively to depot purposes and facilities connected therewith. The position of the appellant, on the other hand, is that the stipulation merely requires that so much of the land as may be necessary therefor shall be used for depot purposes and facilities connected therewith, and that unless and until all of the land shall be required for that purpose the company has the right to use the residue for any legitimate purpose, so that such purpose be not inconsistent with the future use of the property for depot and railroad purposes when and as necessary.

[2, 3] The purpose of all written contracts and conveyances is to say what the parties mean; and the only legitimate or permissible object of interpreting them is to determine the meaning of what the parties have said therein. In doing this, the language used is to be taken in its ordinary signification, unless it has acquired a peculiar meaning with reference to the subject matter, or unless the context plainly shows that such language is used in some other peculiar sense. If, when so read, the meaning is plain, the instrument must be given effect accordingly. These propositions are familiar and elementary, and they embody the fundamental rule of construction to which all others are subordinate and subservient. If the contract is so drawn and expressed as to render the meaning of the whole, or any part of the instrument ambiguous, then unless the parties themselves have, by their subsequent unequivocal conduct, placed a practical construction upon their language, the auxiliary or subordinate rule to be first applied, and the one of most usefulness and importance, is for the court to place itself as nearly as possible in the situation of the parties at the time of the execution of the instrument, and to consider the facts and circumstances attending the same, including, in particular, the relations of the parties, the

nature and situation of the subject matter, the negotiations leading up to, and the apparent purpose of the transaction. 17 A. & E. Enc. L. (2nd ed.) 21, 22; 13 Cyc. 607; *Bank* v. *McVeigh,* 32 Gratt. (73 Va.) 530, 538; *Starke* v. *Berry,* 118 Va. 706, 711, 88 S. E. 68; *Walker* v. *Gateway Milling Co.,* 121 Va. 217, 223, 92 S. E. 826; *Atlanta, etc., Ry. Co.* v. *McKinney,* 124 Ga. 929, 53 S. E. 701, 6 L. R. A. (N. S.) 436, 110 Am. St. Rep. 215.

[4] A conveyance of land to a railway company, "to be used for depot purposes and facilities connected therewith," if taken upon its face and given its primary and most apt and natural meaning, immediately conveys the thought that the company will be expected to use at least a part of the land for a depot, and the residue for facilities connected therewith; and to say that it means that the company will only use such part as it needs for a depot and incidental facilities and may lease the residue to outsiders for business purposes wholly apart from its passenger and freight operations, is to say something which the parties did not say, and to ascribe a meaning to their words which comes as a second thought, and finds its support, not in the words used, but in a refinement of construction based upon secondary and inapplicable rules of interpretation. These secondary rules will be presently mentioned, but we say they are inapplicable because, if it be conceded that the covenant is not clear on its face, we must next look to the circumstances surrounding its execution, and they certainly remove all doubt as to its meaning.

Avis owned all the adjacent land at that point. He wanted a depot there and the company likewise desired to establish one. The conveyance was for more land than was needed then, and more, perhaps, than would ever be needed merely for a depot site. When the deed was presented to Avis for his signature, it contained a correct description of the land, but stated a nominal consideration of $1.00, omit-

ting any reference to the use for which the property was to be employed. He refused to execute the deed in this form and required the covenant to be inserted. This was the consideration upon which he parted with the property. It did not stipulate merely for the establishment of a depot, but fixed a use co-extensive with the property conveyed, and one which would enhance rather than depreciate the value of the rest of his land. It seems to us that both parties must have understood that the company would use such part of the land as it needed for a depot, and would use the residue for facilities connected therewith. They knew that the whole of the land would not be occupied by the depot building, and they definitely specified the use which should be made of the residue.

[5, 6, 7] Much reliance is placed by counsel for the railway company upon the general rule that the language in a deed poll must be construed most strongly against the grantor, and upon the further general rule that restrictive covenants, like all other impediments to the free alienation of real estate, are not favored. The first rule here mentioned is itself not a favorite, and is generally said to be the one of last resort when all other rules of construction have failed. It certainly is never to be resorted to unless the language involved can be said to be ambiguous. The second rule, which declares that restrictive covenants are not favored, simply means that all doubts are to be resolved in favor of the free alienation of real estate. Neither rule can operate when there is no room for doubt as to the intention of the parties. It is well settled that where the grantor has clearly restricted the use of the land granted, and the restriction itself is not illegal, the covenant creates a trust which, in a proper case, courts of equity will enforce by means of an injunction against an inconsistent use. Graves' Notes on Real Property, sec. 240, and citations; *Wells* v. *Chapman* (N. Y.), 4 Sand. Ch. 312; *Whitney* v. *Union Ry.*

*Co.*, 77 Mass. (11 Gray) 359, 71 Am. Dec. 715; *Haskell* v. *Wright*, 23 N. J. Eq. 389; *Winnipesaukee, etc.*, v. *Gordon*, 63 N. H. 505, 3 Atl. 426.

[8] It is argued that the construction adopted by the lower court and approved by us cannot be reached without making the covenant read, *"only* for depot purposes and facilities," thereby supplying a word which the parties did not use. The argument is plausible, but not sound. We might, with equal plausibility, say that the covenant cannot be construed in accordance with the contention of the railway company without adding thereto the words, "but if not needed for depot purposes and facilities, the land hereby conveyed may be used for any other lawful purpose." It is, of course, true that courts cannot read into contracts and conveyances language which will add to or take from the meaning of the words already contained therein; but if this rule could be applied as appellants attempt to apply it here, the result would be that courts could never undertake to construe an instrument without being confined to the exact language employed therein. There are more ways than one of expressing an idea clearly, and the language of the decree of the circuit court, declaring that "it was the intention and agreement of the grantors and grantee in the deed that the land therein conveyed should be used only for depot purposes and facilities connected therewith," was simply another and more emphatic way of stating the already clear import of the provision in question.

The case of *Bolling* v. *Petersburg*, 8 Leigh (35 Va.) 224, is strongly relied upon as sustaining the contention of the appellants. An examination of that case will show a substantial and vital distinction between it and the instant case. As unmistakably shown by the several opinions delivered in the case, the sole intention of the grantors in the deed there involved was to require the maintenance of a court-

house on the land conveyed, and not to further restrict its use. In the brief of counsel for the appellee, it is said: "The distinction is plain. In the *Bolling Case* the intention of the parties was *to require the use which should be made,* while in this case the intention of the parties was *to specify the use which might be made.*" This, we think, is the true distinction between the two cases. If the deed from Avis had said that the land was conveyed on condition that a depot should be erected and maintained thereon, then it would be simple and easy enough to say that there was no restriction upon the use of any part of the land not needed for the depot; but the language of the covenant which actually was embodied in the deed seems to us to plainly limit the use of the additional land to facilities connected with the depot.

We find no error in the decree, and it is affirmed.

*Affirmed.*