**Richmond**

DAVID S. WILSON

V.

L. B. HOLYFIELD

Record No. 811384.

March 9, 1984.

*Charles L. Williams, Jr. (Melissa J. Warner; Gentry, Locke, Rakes & Moore*, on brief), for appellant.
*James N. Kincannon (Martin P. Burks*, on brief), for appellee.

THOMAS, J., delivered the opinion of the Court.

On August 30, 1978, L. B. Holyfield and David S. Wilson entered into a contract in which Holyfield agreed to sell and Wilson agreed to buy certain land located near Smith Mountain Lake. Prior to closing, the parties fell into a dispute as to the meaning of the contract.

As a result, Wilson filed a motion for declaratory judgment in which he asked the trial court to "construe the contracts, agreements and understandings between the parties. . . ." In response, Holyfield contended, for several reasons, that "the minds of the two parties have never met on material matters, essential to be contained in any enforceable contract for the sale and purchase of land. . . ." Holyfield asked the trial court to declare that no contract existed. The trial court ruled in favor of Holyfield. Wilson appealed, contending that the trial court erred. We agree with Wilson. Therefore, we will reverse the decision of the trial court.

Though Holyfield advanced several arguments in support of his position that the minds of the parties had not met on essential terms, the trial court based its ruling solely on the argument that the financing provision in the contract was incomplete, indefinite and thus unenforceable. Consequently, our review is limited to the question whether the financing provision was so indefinite that the trial court could not determine its meaning.

The total purchase price was set forth as $150,000. The financing provision, on which the trial court based its opinion, reads as follows:

> Owner financing of 71% of purchase price, $106,500, at an interest rate of 10 percent per annum for a period of eight (8) years. Balance of 29% of purchase price, $43,500, to be paid as follows: $7,500 option payment to be credited to buyer and balance of $36,000 to be paid by buyer at settlement. Payments to be made yearly with interest to seller.

Holyfield argued that the foregoing provision is indefinite because it makes no reference either to a deed of trust or other security, or to either prepayment or anticipation.

The trial court first explained its ruling in a letter opinion dated May 11, 1981. There, the court wrote as follows:

> The Court is of opinion that terms of the Option and Contract of Sale relating to financing, including amount of annual payments on principal and interest, deed of trust lien and partial release or subordination thereof, substituting other security for a deed of trust lien, and right of anticipation, are incomplete and indefinite. The parties never fully agreed on the details of financing but each party's evidence indicated that the financing terms were incomplete and meant entirely different things to each party. The Court cannot make a contract for the parties by rewriting the contract to provide what it thinks should be done to conform to "customary practices."

The court elaborated upon its views in its Final Decree of May 20, 1981, which incorporated by reference the May 11 letter opinion. The Court wrote this in its decree:

[T]he terms and provisions of the Option and Contract of Sale executed by the parties hereto under date of August 30, 1978, as they relate to payment of deferred purchase money to become due thereunder and to the security to be given therefor are ambiguous, incomplete and uncertain, so that the Court cannot say what was intended to be agreed upon between the parties. . . .

The essence of the trial court's opinion is that because the financing provision is silent as to certain matters that are customarily found in contracts for the sale of real estate, the provision, as written, is ambiguous, incomplete, and uncertain. In taking that approach, the trial court did exactly what it stated it would not do: it ruled on what the parties might have agreed to instead of ruling on what they actually agreed to.

The principles surrounding court review of contracts are well-settled. Contracts are not rendered ambiguous merely because the parties disagree as to the meaning of the language employed by them in expressing their agreement. *See Manss-Owens Co.* v. *Owens & Son*, 129 Va. 183, 197, 105 S.E. 543, 547 (1921). Further, the question whether a contract is ambiguous is not one of fact but one of law.

In addition, we have often said that it is the duty of the court to construe a contract as written:

It is the function of the court to construe the contract made by the parties, not to make a contract for them. The question for the court is what did the parties agree to as evidenced by their contract. The guiding light in the construction of a contract is the intention of the parties as expressed by them in the words they have used, and courts are bound to say that the parties intended what the written instrument plainly declares.

*Meade* v. *Wallen*, 226 Va. 465, 467, 311 S.E.2d 103, 104 (1984); *Magann Corp.* v. *Electrical Works*, 203 Va. 259, 264, 123 S.E.2d 377, 381 (1962). A corollary to the last stated principle is that courts cannot read into contracts language which will add to or take away from the meaning of the words already contained therein. *See Virginian Ry. Co.* v. *Avis*, 124 Va. 711, 719, 98 S.E. 638, 640 (1919). Finally, on review, we are not bound by the trial court's construction of the contract provision here in issue. *See*

*Hutchison* v. *King*, 206 Va. 619, 625, 145 S.E.2d 216, 221 (1965). We have an equal opportunity to consider the words within the four corners of the disputed provision.

Relying upon the foregoing principles, we conclude that the financing provision is not ambiguous. We think the terms used in that provision are sufficiently exact and definite to provide for enforcement. The problem here is similar to the one the Court faced in *Manss-Owens Co.* where we said there was no uncertainty as to the language by which the parties expressed their agreement; instead, the uncertainty sprang from their difference of opinion as to the meaning of the provision. 129 Va. at 197, 105 S.E. at 547.

The fact that no deed of trust or security is provided for is of no moment. Neither party points to any legal principle which states that a contract to sell land is void absent a requirement for a deed of trust or other security. Nor does the failure to refer to prepayment or the right to anticipate show that the financing provision is fatally defective. Again, so far as we are aware, there is no requirement, in the law, that a real estate sales contract must contain such provisions in order to be valid.

Moreover, what the parties claim they might have said, or should have said, cannot alter what they actually said. Thus, even though the financing provision, as written, may not contain customary provisions, the parties had a right to agree to what is contained therein unless their agreement was prohibited by public policy. Of course, no such prohibition exists here.

The provision means what it says. Of the $150,000 purchase price, 71% or $106,500 will be paid to Holyfield over an eight-year period at an interest rate of 10%. As to the remaining 29%, which amounts to $43,500, Holyfield will credit Wilson the $7,500 paid by Wilson to secure the option on the property. Wilson will pay Holyfield $36,000 at settlement. There is no reference to a deed of trust or other security so none is required. There is no reference to anticipation so there will be no anticipation. The parties are bound to carry the financing provision into effect just as it is written.

The trial court confined its ruling to the questions concerning the financing agreement. Consequently, in light of the disposition we have made of this case, it must be returned to the trial court for further proceedings.

This judgment, then, will be reversed and the case remanded.

*Reversed and remanded.*

CARRICO, C.J., dissenting.

I would affirm the judgment of the trial court. In the first place, I do not agree with the majority's finding that the contract in question does not require the purchaser to give security for payment of the balance of the purchase price. I think the term "financing," as used in the contract, imports an obligation to provide security. Indeed, the purchaser states on brief that "the use of the term 'financing' implies that some sort of security will be used at closing," and he cites a treatise as authority for the statement. Furthermore, the purchaser conceded in the trial court that the contract required him to give security in the form of a lien on the property covered by the contract.

Beyond this point, however, the contract is incomplete and indefinite, and the parties are in hopeless disagreement, with respect to such critical matters as type of security, partial releases, subordination, substitution of collateral, and prepayment. The purchaser says that these are matters to be "settled at closing." But where, as here, a court is called upon to resolve a contract dispute and it is apparent that the minds of the parties have never met on essential provisions, the only course is to hold the contract unenforceable. The trial court followed that course, and this court should affirm.

COCHRAN, J., joins in this dissent.