## CIRCUIT COURT OF FREDERICK COUNTY

Tripplett et al.

v.

Kessinger et al.

December 12, 1984

Case No. (Chancery) C-84-213

## By JUDGE ROBERT K. WOLTZ

This is a suit for specific performance of option contract provisions contained in a deed of bargain and sale from one Flack, now deceased, to the complainants. By deed of March 9, 1971 the decedent conveyed to the complainants one and one-half acres of an approximately two-acre tract. The deed contained the following provision as to the residue of the tract:

> The party of the first part covenants and agrees that in the event he should at any time during his lifetime desire, or be willing to sell the remaining portion of the aforesaid original lot, he will give the parties of the second part, their heirs and assigns, the first option to purchase said land at the same price, and upon the same terms, as he would be willing to accept from any other purchaser, and further that if said party of the first part still owns said land at the time of his death the parties of the second part, their heirs and assigns shall have the right to purchase same *at the official appraised value thereof.* (Emphasis added.)

Decedent died February 1, 1984, and his will, executed July 28, 1982, was admitted to probate one week later. By its terms, after payment of debts, etc. he left all his property to a nephew, Thomas L. Kessinger, the defendant herein, and appointed him as executor.

Tripplett testified that he discussed option rights with Flack before the deed was drafted and they agreed that in the event of Flack's death the option price would be the value of the optioned property as appraised for county real estate taxes. He further testified that they went to W. E. Edwards, Esquire, an attorney in whom both had confidence, with whom they discussed the deed and option, telling him what provisions they wanted, and the attorney included the word "official" to modify "appraised value." The deed was duly executed without further discussion, delivered and recorded.

In November 1970 the entire two-acre tract was appraised for local real estate tax purposes at $900.00, which remained that appraised value at the time of the deed between the parties. In August 1980 the remaining one-half acre was appraised for real estate tax purposes at $3,000.00, and the County land appraiser testified there had been no appreciable increase from that time until the date of decedent's death.

The scrivener of the deed, who qualified as an expert in real estate law, testified that he did prepare the deed but that he had no notes or recollection as to use of the phrase "official appraised value thereof," and no recollection of any instructions on this wordage. He opined that the phrase had a technical meaning and, as it related to decedent's death, the phrase related to appraised value for inheritance tax purposes. It appears to the Court rather than the phrase having a technical legal meaning, the testimony of the witness was in effect a construction of the option contract, but construction of it is the function of the Court, not the witness.

The defendant Kessinger stated he had discussed the matter before the decedent's death, the latter telling him that he should get an appraiser and suggested one to retain to give an appraisal value. He had it appraised and introduced evidence of his appraiser of a value of $11,500.00.

Generally parol or extrinsic evidence is inadmissible to vary the terms of a written instrument; but where there is an ambiguity in a document such evidence is admissible where the ambiguity is apparent on the face of the instrument. *Cohan* v. *Thurston*, 223 Va. 523 (1982). In the Court's mind there is no question that the phrase "official appraised value" thereof is ambiguous. As demonstrated by the evidence the complainant says it means the appraised real estate value, the scrivener says it means the appraised value for inheritance tax purposes, the defendant says it means the value placed by a real estate appraiser selected by him. Other possibilities are appraisal for the purpose of probate or administration tax under Section 56-88 and appraisal of the estate under Code Section 64.1-133.

The inheritance tax as it existed at the time of execution of the deed no longer exists except in a very limited sense related to credit against the federal estate tax. Even so a court of equity could have an appraisal made as though for the formerly existing inheritance tax in order to accomplish the intent of the parties, were that their intent. The same could be done for the administration tax or for an appraisal under Section 64.1-133.

Examining the matter contained in the four corners of the document and based on the evidence as to the prior dealings and the circumstances surrounding execution of this contract, the Court is left with the testimony of the complainant as to its meaning and that of the defendant. That of the defendant is unacceptable as it would fly in the face of the word "official."

That ascribed by the complainant is tenable. However, if for no other reason the Court cannot accept that construction in view of Section 8.01-397, "the dead man's statute," as the Court finds his testimony to be uncorroborated. This is a suit against the devisee, a "representative," of a person incapable of testifying, and in that situation the statute provides, "No judgment or decree shall be rendered in favor of an adverse or interested party founded on his uncorroborated testimony." To found a decree for specific performance in this case based on the uncorroborated testimony of the complainant would be contrary to the statute.

Where at all possible the Court should construe and give meaning to the solemn written undertakings of parties to a contract. As said in *Sawyer* v. *Matthews*, 166 Va. 177, 190 (1936):

> However, the law does not favor, but leans against the destruction of contracts because of uncertainty. Therefore the Courts will, if possible, so construe the contract as to carry into effect the reasonable intention of the parties *if that can be ascertained.* Though there are some formal imperfections in a written contract, still it is sufficient if it contains matter which will enable the Court to ascertain the terms and conditions on which the parties intended to bind themselves. (Emphasis added.)

The Court is to construe the contract from its four corners as written where this is possible, *Wilson* v. *Holyfield*, 227 Va. 184 (1984), but because of the ambiguity mentioned the Court is unable to do this. The Court cannot read into the language contained in the four corners anything that adds to or takes away from the meaning of the words contained therein and is not authorized to make a contract for the parties. *Id.*, at 187.

The language in dispute here creates an ambiguity and parol evidence is properly admissible to explain the ambiguity. *Renner Plumbing, etc., Inc.* v. *Renner*, 225 Va. 508, 515-516 (1983). Nevertheless the only evidence introduced which might satisfactorily give meaning to the ambiguity is uncorroborated testimony on which no decree in the circumstances of this case can be rendered. Section 8.01-397.

As to the extent and degree of evidence which will be considered corroborative under Section 8.01-397, see generally *Hereford* v. *Paytes*, 226 Va. 604 (1980), and *Brooks* v. *Worthington*, 206 Va. 352 (1965). In the case at bar the Court finds the testimony of the complainant to be devoid of any corroboration.

While it is regrettable and to be avoided where at all possible, the Court finds unfortunately that the ambiguity contained in the contract cannot be interpreted based on the parol evidence introduced, as a consequence

of which the Court must find the agreement unenforceable for vagueness. Therefore decree will enter on this basis denying specific performance.