COURT OF APPEALS OF VIRGINIA

Present:   Judge Clements, Senior Judges Willis and Annunziata
Argued at Alexandria, Virginia


SCOTT REYNOLDS McMARTIN

                                                  MEMORANDUM OPINION[*] BY
v.        Record No. 0856-05-4                    JUDGE JEAN HARRISON CLEMENTS
                                                  JANUARY 31, 2006
MARY REYNOLDS McMARTIN


                  FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
                            Jane Marum Roush, Judge

            Sharon Voyles Filipour (Kinsey, Lynch & Filipour, on brief), for
            appellant.

            No brief or argument for appellee.


        Scott Reynolds McMartin (husband) appeals from an order entered by the trial court

reducing his monthly child support obligation from $1,800.50 to $1,460 and awarding Mary

Reynolds McMartin (wife) spousal support of $340 per month.  Husband contends the trial court

erred in (1) imputing an annual income of $120,000 to him for purposes of determining his child

and spousal support obligations, (2) misinterpreting the parties' property settlement agreement

(PSA) as providing wife a guaranteed minimum amount of combined child and spousal support of

$1,800 per month, and (3) failing, in violation of Code § 20-108.2(C), to (a) include wife's

commissions, advances, and gifts in her gross income, (b) deduct the child support he paid for his

other children from his gross income, and (c) include the amount of wife's spousal support award in

her gross income and deduct that amount from his gross income.  For the reasons that follow, we

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

affirm the judgment of the trial court in part, reverse the judgment of the trial court in part, and remand the case for further proceedings consistent with this opinion.

As the parties are fully conversant with the record in this case and because this memorandum opinion carries no precedential value, this opinion recites only those facts and incidents of the proceedings as are necessary to the parties' understanding of the disposition of this appeal.

## I. BACKGROUND

Husband and wife were married in 1991. Two children were born of the marriage, the first in September 1992 and the second in June 1994. The parties separated in June 1998. On October 6, 1998, the parties entered into a PSA resolving all issues of equitable distribution and support. The PSA was affirmed, ratified, and incorporated, but not merged, into the final decree of divorce entered by the trial court on December 20, 2000.

Under the provisions of the PSA, husband agreed to provide health insurance for the children, pay wife $1,800.50 per month in child support, and waive any right he might have to spousal support. Paragraph 8(A) of the PSA further provided as follows:

> The Wife shall have a reservation of spousal support until [the parties' younger child's twenty-first birthday]. The parties agree that his reservation may result in an award of spousal support only in the event and for the length of time in which the Husband is required to pay less than one thousand eight hundred dollars per month in child support.

At the time the parties entered into the PSA, husband, who had twenty years of work experience as an executive in sales and marketing for various technology companies, was employed as a sales executive with MedSurg Industries, Inc., and earned an annual income of $120,000. After obtaining a similar position with Mapics, Inc., husband earned an average of $200,000 per year from 2001 through 2003. As a result of lagging sales of the product with which he was associated, husband was laid off in August 2003, but was able to obtain similar employment as a senior sales

account manager with Manugistics, Inc., in September 2003. However, husband resigned from his employment with Manugistics in December 2003. He subsequently received unemployment compensation benefits and, in February 2004, obtained employment as a salesman at a car dealership. In May 2004, husband voluntarily left his job with the car dealership and started his own company offering consulting services to manufacturing businesses in August 2004.

Husband earned $7,000 in 2004, $2,200 of which was in unemployment compensation benefits and $4,700 of which was from the car dealership. Meanwhile, wife, who had primary physical custody of the parties' children, earned $26,000 in 2004 working part-time.

Citing his departure from his employment with Manugistics and the resultant reduction in his income despite his efforts to obtain suitable employment, husband filed a motion to reduce his child support obligation in April 2004. In response, wife filed a motion for spousal support in August 2004, asserting that, pursuant to the terms of the PSA, she was entitled to request spousal support if the court reduced husband's monthly child support obligation to an amount below $1,800. The trial court conducted an *ore tenus* hearing on the parties' motions on February 1, 2005.[1]

At that hearing, husband testified he resigned from Manugistics in December 2003, only after being told he would be fired if he did not resign. Husband conceded that, for purposes of calculating his child and spousal support obligations, an income of $1,500 per month should be imputed to him because he was earning that amount when he voluntarily left his job with the car dealership. Husband further testified that, when he took the job at the car dealership in February 2004, he "hoped he [would] . . . have sufficient time to look for more suitable work." Instead, he found that "the number of hours he was being required to work interfered with his ongoing job search." Thus, he testified, he left the car dealership in May 2004 and "devoted himself full-time to

---

[1] The record before us includes, in lieu of a transcript of the February 1, 2005 hearing, a written statement of the testimony presented thereat, certified and made a part of the record pursuant to Rule 5A:8.

looking for a job" in June and July 2004.  Finding the "results of his full time efforts . . . very discouraging," husband started the consulting company in order to obtain "some income," "give him something to put on his resume," and "put him in touch, in a positive way, with companies who could potentially hire him to sell."  Husband also testified that, after starting the consulting company, "he focused both on trying to get either a job or consulting work."  To that end, husband testified, he "made use of all the friends and personal contacts he ha[d] to find job leads," "targeted companies that he [thought] might be able to use his services," "sent resumes to any promising listing and/or lead," and "follow[ed] up the resumes with a call or letter."  Husband further stated that he did not limit "his job search to manufacturing companies" or "by geographic area."  According to husband, he was "interviewed a number of times throughout his job search and [was] hopeful of getting hired each time, but none of the interviews had resulted in a job offer."

Husband also testified at the hearing that he had paid wife $1,800.50 per month in child support through March 2004, but had paid her only $400 per month in child support since then.  Husband further testified that he had also paid child support for his other children from a previous marriage who lived with their mother.  He explained that

> his child support obligation was $650 per month but . . . he had been
> unable to pay that support regularly; the mother of those children had
> been very understanding and was allowing him to contribute what he
> could when he could and . . . he had paid, on average, $300 per
> month toward their support.

Asked how he was able to survive financially after losing his employment as a senior sales account manager in December 2003, husband testified that, in addition to the $7,000 he received in earnings and unemployment compensation benefits in 2004, he "received $29,000 from 'cashing out' his share of the equity in [a] home he had owned with Eve Bosek" and "borrowed $20,000 from his sister and $6,000 from his parents."  Husband further acknowledged on cross-examination that he also "cashed in $18,647 worth of stock options on November 26, 2003" and had "some

- 4 -

savings" when he lost his job in December 2003. Husband explained, however, that, as of the date of the hearing, he had spent all of the money he had received since November 2003 on "living expenses (including child support)," starting his consulting company, seeking consulting work, and looking for a job.

Testifying on husband's behalf, Steve Plante stated that he was let go by Mapics shortly after husband was and that, despite devoting "his full time and attention to obtaining new employment since leaving Mapics, he has been unsuccessful" finding a job. Husband also introduced the deposition testimony of Mark Gaeto, the acting vice president of sales operations for Manugistics. Gaeto, who hired husband to work at Manugistics, testified that the company's "sales force was more than halved" after husband left the company. He further testified on cross-examination, however, that Manugistics had hired other sales representatives and account managers after husband left the company. He also testified that, although many companies had merged, "there [were] certainly jobs out there."

Husband also sought to introduce the testimony of a proposed expert witness regarding wife's earning capacity. In granting wife's motion to exclude husband's expert witness on the grounds he had not been timely identified, a decision that is not challenged on appeal, the trial court noted that husband would have been better served by hiring the expert witness "to testify about the appropriateness of [husband's] job search and his earning capacity instead of hiring him to testify about what income [wife] could earn."

Wife argued at the hearing that husband's motion for reduction of his child support obligation should be denied because his resignation from Manugistics was voluntary. Alternatively, wife argued that paragraph 8(A) of the parties' PSA guaranteed her a minimum of $1,800 in combined child and spousal support from husband. Thus, she argued, if the court reduced husband's child support obligation to below $1,800 per month, the difference should be offset by an

award of spousal support "equal to the amount of the reduction." Wife testified that she was unable to pay the bills listed on her income and expense sheet without the full amount of child support provided in the PSA.

In response to questioning by husband's counsel, wife testified that she was "able to keep up with her bills" on $1,800.50 per month because she also received financial help from her friend and boss, Larry Wheeler, who paid for her life insurance policy through his company, paid the full amount of the mortgage on the house they shared without charging her the $900 per month in rent listed on her income and expense sheet, and advanced her money for living expenses and legal bills. Wife further testified that she was expecting to receive a commission at work from the sale of a power plant and that she and Wheeler "considered the monies that he gave her over and above her salary . . . advances against her future commission." Wife also testified that, although Wheeler had paid the entire down payment on the house, they agreed "that in the event she was able to pay him back for her one half share ($18,000), he would put her name on the deed." Wife conceded at the hearing that she had no evidence to present regarding husband's efforts to obtain suitable employment after leaving Manugistics in December 2003.

After considering the parties' evidence and arguments, the trial court found that husband's termination of employment in December 2003 and resultant loss of income constituted a material change of circumstances warranting a recalculation of his child support obligation. Accepting husband's testimony that he would have been fired had he not resigned, the court found that husband was not voluntarily unemployed. The court further found, however, that husband was voluntarily underemployed and imputed an annual income of $120,000 to him. In reaching that determination, the court stated as follows:

> He sent out resumes and he's been on some interviews, but I found that his evidence on this was quite lacking. He did not present to me a copy of any job inquiries he's made. I know he's made these electronically but, nonetheless, I think if – if he wanted to convince

me that he's doing everything he could to find a job or persuade me, I should say, then, I would expect to see copies of his letters that he's sent out by e-mail or otherwise, a copy of his current resume. Nothing about that. I just heard that he'd made inquiries and his uncorroborated testimony that he's doing everything he can to find a job.

With the exception of the month of June of 2004, when he testified he looked for a job full time, I don't feel he's made adequate efforts to find a new job.

I do not believe he can readily step into a job paying him two hundred thousand dollars a year, but I do think he has more – he's had more than enough time to find a job in the range of a hundred and twenty thousand dollars a year that he was earning when the property settlement agreement was signed in 1998.

And, instead, he's put what effort he has made into starting a consulting business that has not gotten off the ground. . . . Instead of abandoning this venture, which is clearly not going anywhere, he continues to put what resources he has into it.

\*　　\*　　\*　　\*　　\*　　\*　　\*

I find that he has the earning capacity to make a hundred and twenty thousand dollars a year and that he has not been diligently searching for a job that would help him realize that earning capacity.

Subsequently asked the basis of its finding that husband was capable of earning $120,000 per year, the court responded as follows:

His education, background, earning capacity, his – what I think are – less than reasonable efforts to find a new job, the fact that he found two jobs in rapid order in the field, the fact that he's spent excessive amounts, I think, on this business which is going nowhere, which was previously unsuccessful, all of those factors.

Using the annual income of $120,000 for husband and $26,000 for wife and considering "all of the factors" set forth in Code § 20-108.1, the trial court reduced husband's monthly child support obligation to $1,511. In announcing the award, the trial court distributed three completed "Child Support Guideline Worksheets": (1) worksheet "A," showing, pursuant to Code § 20-108.1(B), the rebuttable presumptive guideline calculation of child support "based on the realities of the situation as they presented themselves at trial without any deviation"; (2) worksheet "B," showing "a deviation from the guidelines" using the $18,000 annual income husband stipulated should be

- 7 -

imputed to him based on his income from the car dealership; and (3) worksheet "C," showing a "deviat[ion] from the guidelines by imputing to [husband] an income of [$120,000] per year." The trial court concluded that "the application of the guidelines in this case, even with [husband's] agreed to imputation of fifteen hundred dollars a month of income to him, would be unjust and inappropriate."

In expressly calculating the presumptive amount of child support under the guidelines in worksheet "A," the trial court made no adjustments to the parties' gross incomes based on spousal support. Likewise, the court made no reduction in husband's gross income based on husband's reported payment of support for his other children, stating as follows:

> I have not deducted from the father's gross income the six hundred and fifty dollars that he is to pay in child support for his [children] from an earlier marriage.
> By his own testimony, he is not actually paying that support now and under Code 20-108.2 . . . that amount is deducted from his gross income only if he's, quote, "actually paying," close quote, the support and he is in arrears on that as well.
> I understand he's paying what he can, but it's certainly not six hundred fifty dollars a month.

Using the same incomes it used for the child support determination and "consider[ing] each and every one of the factors in [Code §] 20-107.1 as to which evidence was presented," the trial court then awarded wife $289 per month in spousal support. The trial court stated that it focused particularly on husband's "ability to pay" and wife's "needs as evidenced by her income and expense statement" in determining the spousal support award.

Husband filed a motion to reconsider, arguing, *inter alia*, that the trial court erred in not including the amount of the spousal support awarded to wife in wife's gross income and in not deducting that amount from his gross income. Agreeing with husband that spousal support should be accounted for in the parties' gross incomes, the court distributed a revised worksheet "C" showing an amended spousal support award to wife of $340 per month and an amended child

support award of $1,460 per month. The court, however, did not distribute a revised worksheet "A" showing the effect of the spousal support award on the parties' gross incomes and the presumptive child support guideline amount. Explaining the increase in the spousal support award it ordered, the trial court noted that "[t]he evidence at trial was that [wife] need[ed] $1,800 per month in support."

On March 16, 2005, the trial court entered an order memorializing its revised child and spousal support awards, and this appeal followed.

## II. ANALYSIS

On appeal, we view the evidence, and all reasonable inferences fairly deducible from it, in the light most favorable to the prevailing party below. See Joynes v. Payne, 36 Va. App. 401, 411-12, 551 S.E.2d 10, 21 (2001). "Decisions concerning both [spousal and child] support rest within the sound discretion of the trial court and will not be reversed on appeal unless plainly wrong or unsupported by the evidence." Calvert v. Calvert, 18 Va. App. 781, 784, 447 S.E.2d 875, 876 (1994). "'The credibility of the witnesses and the weight accorded the evidence are matters solely for the fact finder who has the opportunity to see and hear that evidence as it is presented.'" Thomas v. Thomas, 40 Va. App. 639, 644, 580 S.E.2d 503, 505 (2003) (quoting Sandoval v. Commonwealth, 20 Va. App. 133, 138, 455 S.E.2d 730, 732 (1995)). Hence, "we will not substitute our judgment for the court's determination with regard to the credibility of witnesses." Dickerson v. Commonwealth, 36 Va. App. 8, 14, 548 S.E.2d 230, 233 (2001).

## A. Imputation of Income

Husband first contends the trial court erred in imputing an annual income of $120,000 to him because wife failed to prove that "work producing that income was currently available to him." While we agree with husband's premise that wife did not present such evidence, we disagree with his conclusion that the trial court consequently erred in imputing an annual income of $120,000 to him.

- 9 -

Indeed, in claiming the trial court erred because wife failed to meet her burden of proving a job paying $120,000 was currently available to him, husband ignores his threshold burden, as the party seeking modification of an existing child support order, of proving that the annual salary of $120,000 he earned when the original support order was entered should not be imputed to him. See Hatloy v. Hatloy, 41 Va. App. 667, 672, 588 S.E.2d 389, 391 (2003). He further ignores the trial court's finding that he failed to meet that burden.

Husband sought reduction of his child support obligation that was set forth in the parties' PSA and affirmed, ratified, and incorporated into the trial court's December 20, 2000 final decree of divorce. Our Supreme Court has described the burden of proof that is to be imposed upon a party seeking such a modification as follows:

> When invoking the divorce court's continuing jurisdiction under Code § 20-108, following entry of a final decree of divorce, a party seeking a change in court-ordered child support has the burden to prove by a preponderance of the evidence a material change in circumstances justifying modification of the support requirement. Edwards [v. Lowry,] 232 Va. [110,] 112, 348 S.E.2d [259,] 261 [(1986)]. In discharging this burden, a father seeking a reduction in support payments must also make a full and clear disclosure about his ability to pay, and he must show his claimed lack of ability to pay is not due to his own voluntary act or because of his neglect. Id. at 112-13, 348 S.E.2d at 261. In other words, the father must establish that he is not "voluntarily unemployed or voluntarily under employed." Code § 20-108.1(B)(3).

Antonelli v. Antonelli, 242 Va. 152, 154, 409 S.E.2d 117, 119 (1991).

In this case, the trial court found that a material change occurred in husband's employment circumstances and that he was not voluntarily unemployed. Those findings are not challenged on appeal. The question remains, however, whether husband carried his burden of proving he was not voluntarily underemployed.

Generally, "a trial court determining child support is required to impute income to a parent who is found to be voluntarily underemployed." Niemiec v. Dep't of Soc. Servs., 27

- 10 -

Va. App. 446, 451, 499 S.E.2d 576, 579 (1998) (citing Code § 20-108.1(B)(3)). Similarly, a trial

court determining spousal support "may impute income to a party who is voluntarily . . .

underemployed." Calvert v. Calvert, 18 Va. App. 781, 784, 447 S.E.2d 875, 876 (1994).

"Whether a person is voluntarily . . . underemployed is a factual determination." Blackburn v.

Michael, 30 Va. App. 95, 102, 515 S.E.2d 780, 784 (1999). In determining whether to impute

income to a party, "the trial court must 'consider the [party's] earning capacity, financial

resources, education and training, ability to secure such education and training, and other factors

relevant to the equities of the parents and the children.'" Id. (quoting Niemiec, 27 Va. App. at

451, 499 S.E.2d at 579 (citing Code § 20-108.1(B))). "The decision to impute income is within

the sound discretion of the trial court and . . . will not be reversed unless plainly wrong or

unsupported by the evidence." Id.

In determining, in Hatloy, whether, for purposes of imputing income, a father seeking

reduction of his existing court-ordered child support obligation met his burden of proving he was

not voluntarily underemployed, we distinguished between the father's burden of proof and the

burden of proof imposed on parties seeking imputation of income to the other party at the time of

an initial support award, as follows:

> Although the word, "imputation," is used in this context,
> the burden of proof remains on husband, not on wife who is
> arguing for imputation, unlike cases asking for imputed income at
> the time of the initial award. Here, the trial court had previously
> set an amount of support, based on husband's then-salary from [his
> job at the time of the initial award]. Thus, wife's request for
> imputation is basically an argument in support of continuing the
> initial award. Husband, on the other hand, is asking the court to
> reduce the previously set support amount. In meeting his burden
> on the motion to reduce the awarded support, husband must prove,
> among other issues, that he should not have his previous income
> from [his job at the time of the initial award] imputed to him.

- 11 -

<u>Hatloy</u>, 41 Va. App. at 672 n.3, 588 S.E.2d at 391 n.3; <u>see also</u> <u>Stockdale v. Stockdale</u>, 33 Va. App. 179, 184, 532 S.E.2d 332, 335 (2000) ("The burdens of production and persuasion are generally allocated to the party seeking to disturb the status quo.").

Thus, an obligor seeking reduction of an existing court-ordered support obligation based on an alleged decrease in his earning capacity must demonstrate that his income at the time of the original award should not be imputed to him. <u>Id.</u> <u>Compare</u> <u>Niemiec</u>, 27 Va. App. at 451, 499 S.E.2d at 579 (holding that, for purposes of determining the initial support award, "[t]he burden is on the party seeking the imputation to prove that the other [party] was voluntarily foregoing more gainful employment"); <u>Blackburn</u>, 30 Va. App. at 102, 515 S.E.2d at 784 (holding that, for purposes of determining support where a party seeks reduction of his court-ordered support obligation and imputation of income to the other party based on her increased earning capacity, "'[t]he burden is on the party seeking the imputation to prove that the other [party] was voluntarily foregoing more gainful employment'" (quoting <u>Niemiec</u>, 27 Va. App. at 451, 499 S.E.2d at 579)). Only after the obligor satisfies that threshold burden does the burden of proof then shift to the other party to show that the obligor was voluntarily foregoing more gainful employment. <u>See</u> <u>Hatloy</u>, 41 Va. App. at 673-74, 588 S.E.2d at 392 (concluding that the trial court properly accepted the father's evidence showing he was unable to obtain employment comparable to the $55,000-per-year job he had at the time of the initial award, and then finding that the mother failed to present any evidence refuting the father's testimony that he was unable, after being terminated from the $55,000-per-year job, to find a job that paid more than $19,200 per year because he lacked a college degree).

Accordingly, because husband sought reduction in this case of his court-ordered child support obligation, he had the initial burden of showing he should not have the $120,000 annual earned income he received at the time of the original award imputed to him. In other words,

husband had to prove that a job paying at least $120,000 per year was not available to him. Like the father in Hatloy, husband attempted to meet his burden by putting on evidence intended to demonstrate that he was unable, despite his diligent efforts, to obtain suitable employment. However, unlike in Hatloy, the trial court in this case did not accept husband's testimony that he had diligently looked for suitable employment and found that husband failed to show that he made reasonable efforts "to find a job in the range of a hundred and twenty thousand dollars a year that he was earning when the property settlement agreement was signed in 1998." Consequently, after considering husband's education, employment background, earning capacity, financial resources, and his "less than reasonable efforts to find a new job," the trial court found that husband was voluntarily underemployed and imputed to him the earned income he had at the time of the initial support award.

Viewed in the light most favorable to wife, the prevailing party below, the record supports the trial court's judgment. Husband's evidence demonstrated that he was a highly qualified sales executive who worked for several companies during his career and earned an average of $200,000 per year from 2001 through 2003. Husband's evidence further established that, after losing his job at Manugistics in December 2003, he spent, at best, only two of the next thirteen months searching full-time for employment befitting his qualifications. He presented no evidence that he looked for suitable work during the initial two-month period when he was receiving unemployment benefits. He admitted that the job he obtained in February 2004 as a car salesman did not permit him time to look for suitable work. He further admitted that, after leaving his job with the car dealership in May 2004, he spent time, beginning in August 2004, establishing and operating his own consulting company, rather than concentrating solely on looking for a job. Husband testified that his consulting company would "put him in touch" with potential employers, but he produced no other evidence confirming that testimony, and the trial court rejected

- 13 -

husband's unsupported claim. See Anderson v. Anderson, 29 Va. App. 673, 686, 514 S.E.2d 369, 376 (1999) ("The trier of fact ascertains a witness'[s] credibility, determines the weight to be given to their testimony, and has the discretion to accept or reject any of the witness'[s] testimony.").

Moreover, although husband indicated he sent out resumes and went on interviews during the thirteen-month period following his termination from Manugistics, he offered few, if any, particulars regarding his job-hunting efforts. Moreover, as the trial court observed, husband provided no expert testimony that jobs comparable to the one he had at the time of the original support award were unavailable to him. He offered the testimony of a co-worker similarly laid off from Mapics who was also still unemployed, but the co-worker provided no details regarding his or husband's efforts to find suitable employment. Husband further offered testimony from a vice president at Manugistics that the company had significantly down-sized after husband left the company; however, the same witness testified that Manugistics had hired other sales representatives and account managers after husband left the company and specifically stated that "there [were] certainly jobs out there."

We conclude, therefore, that, because husband failed to carry his burden of proving that the annual earned income of $120,000 he had when the original support order was entered should not be imputed to him, the trial court did not abuse its discretion in imputing that amount to him for purposes of determining his support obligation. See Hatloy, 41 Va. App. at 672, 588 S.E.2d at 391. See generally Bowers v. Bowers, 4 Va. App. 610, 617, 359 S.E.2d 546, 550 (1987) ("When the party with the burden of proof on an issue fails for lack of proof, he cannot prevail on that question.").

B. Spousal Support

Husband next challenges the trial court's spousal support award to wife. Specifically, he contends the trial court erred by misinterpreting the reservation of spousal support provided to wife in paragraph 8(A) of the parties' PSA as a guarantee to wife of $1,800 per month in combined child and spousal support. Husband bases his contention on the fact that, after first awarding wife $1,511 per month in child support and $289 in spousal support, upon reconsideration the trial court reduced wife's child support award to $1,460 per month but increased the spousal support award to $340 per month, for a total combined support of $1,800 in both instances.

We agree with husband that the trial court may not properly make an award of spousal support that is contrary to the plain terms of the parties' PSA. See Owney v. Owney, 8 Va. App. 255, 260, 379 S.E.2d 745, 748 (1989) (citing Code § 20-109) (holding that a trial court may not make an award of spousal support that is inconsistent with the plain language of a valid settlement agreement between the parties). We further agree that, pursuant to the plain meaning of its language, paragraph 8(A) of the parties' PSA provides wife with only a "*reservation* of spousal support" that "*may* result in an award of spousal support . . . in the event . . . [h]usband is required to pay less than [$1,800] per month in child support," rather than a guarantee of $1,800 per month in combined support. (Emphases added.) "Support agreements that are voluntarily made by the parties are subject to the same rules of construction applicable to contracts generally." Goldin v. Goldin, 34 Va. App. 95, 107, 538 S.E.2d 326, 332 (2000). Consequently, where, as here, the terms of the agreement are unambiguous, courts must "adhere to the plain meaning of [the agreement's] stated terms," Southerland v. Estate of Southerland, 249 Va. 584, 588, 457 S.E.2d 375, 378 (1995), and may not "'read into [the agreement] language which will add to or take away from the meaning of the words already contained therein,'" id. at 590, 457 S.E.2d at 378 (quoting Wilson v. Holyfield, 227 Va. 184, 187, 313 S.E.2d 396, 398 (1984)). Read accordingly, the instant PSA's provision

- 15 -

giving wife a "reservation of spousal support" if husband's child support obligation is reduced to below $1,800 is plainly not a guarantee of $1,800 in support to wife. Rather, it is merely a reflection of the parties' intent to have the divorce court retain the authority to determine whether, and in what amount, wife is entitled to spousal support, should husband's child support obligation fall below $1,800 in the future. See generally Code § 20-107.1(D) ("In addition to or in lieu of a [spousal support] award [in the final divorce decree], the court may reserve the right of a party to receive support in the future."); Parra v. Parra, 1 Va. App. 118, 127, 336 S.E.2d 157, 162 (1985) (noting that it is well established in Virginia that "a divorce court may specifically reserve its right to consider questions of alimony" and "make or change an award of alimony . . . beyond the time of a final decree").

However, we do not agree with husband's contention that the trial court misinterpreted the PSA. Viewed in the light most favorable to wife, the record does not support that contention or otherwise establish that the court made an award of spousal support that was inconsistent with the terms of the PSA.

Although wife claimed at the hearing that paragraph 8(A) of the PSA provided her a guarantee of $1,800 per month in combined child and spousal support, as husband concedes, the trial court did not explicitly rule on wife's claim. In announcing its initial decision, the court summarized wife's position but never stated or otherwise explicitly indicated that it endorsed that position. To the contrary, the court expressly stated that, in determining whether, and in what amount, wife was entitled to spousal support, it "considered each and every one of the factors in [Code §] 20-107.1 as to which evidence was presented." The court then specifically addressed several of the factors set forth in Code § 20-107.1 and concluded: "Having considered all of the statutory factors and [husband's] ability to pay and [wife's] needs, I award spousal support in the amount of [$289] a month." Clearly, as husband concedes in his brief, if wife's "interpretation of

paragraph 8(A) is correct, there is no need to do a 'needs and ability to pay' analysis." Indeed, had the court adopted wife's view that the PSA guaranteed her a combined support award of $1,800 per month, the court would have simply based its spousal support determination on the terms of the PSA, rather than the factors in Code § 20-107.1.

Moreover, the trial court expressly stated, in announcing its initial award of spousal support to wife, that it gave "the most weight . . . to the obligations, needs, [and] financial resources of the parties." The court further explained that it considered wife's "needs as evidenced by her income and expense statement." In announcing its revised spousal support award following husband's motion to reconsider, the trial court expressly found, based on the evidence presented at the hearing, that wife "need[ed] $1,800 per month in support." The court stated that, in determining spousal support, it "considered that fact, along with all of the other factors [it] discussed at length" in its earlier ruling. Clearly, then, the trial court's spousal support award, which in combination with the court's child support award brought wife's total amount of support to $1,800, was based on the court's findings that wife needed a total of $1,800 in support and that husband had the ability to pay that amount, not on a misreading by the court of paragraph 8(A) of the parties' PSA, as husband contends.

Because the record does not support husband's contention that the trial court misinterpreted the PSA, we conclude that husband failed to demonstrate the trial court abused its discretion in determining the spousal support award. See Heath v. Heath, 38 Va. App. 727, 731, 568 S.E.2d 408, 410 (2002) (holding that the party seeking reversal on appeal has the burden "to show by the record" that the trial court committed reversible error); Kaufman v. Kaufman, 7 Va. App. 488, 499, 375 S.E.2d 374, 380 (1988) ("The judgment of the trial court is presumed correct and he who asserts the contrary is required to overcome the presumption by record proof . . . .").

## C. Child Support

Husband also contests the trial court's determination of his child support obligation. Specifically, he argues the trial court erred, under Code § 20-108.2(C), by (1) not including wife's commissions, advances, and gifts in her gross income, (2) not deducting the child support he paid for his other children from his gross income, and (3) not including the amount of wife's spousal support award in her gross income and not deducting that amount from his gross income. We will address each of these claims of error separately.

### 1. Wife's purported commissions, advances, and gifts

In computing a party's gross income for purposes of applying the statutory presumptive child support guidelines, Code § 20-108.2(C) requires the inclusion of "all income from all sources." Such income "shall include, but not be limited to, income from salaries, wages, commissions, . . . [and] gifts." Code § 20-108.2(C). This income "includes nonmonetary as well as cash income." Carmon v. Dep't of Soc. Servs., 21 Va. App. 749, 755, 467 S.E.2d 815, 818 (1996).

Husband claims the trial court improperly failed to include in wife's gross income the financial help she received from a male friend, namely: (a) half of the $36,000 that wife's friend paid as a down payment on their house; (b) the money that wife's friend advanced her for living expenses and legal fees; (c) the amount wife's friend paid for her life insurance; and (d) the $900 per month in rent that wife's friend did not make her pay. The evidence, however, when viewed in the light most favorable to wife, does not support husband's claim.

With regard to the down payment on the house, wife testified that she and her friend agreed "that in the event she was able to pay him back for her one half share ($18,000), he would put her name on the deed." It follows, therefore, that wife's name was not on the deed and her

friend retained full ownership of the house. Consequently, the friend's down payment on a house that was his separate property did not constitute a gift to wife.

With regard to the other payments and advances at issue, wife explained that she and her friend "considered the monies that he gave her over and above her salary . . . advances against her future commission" from the sale of a power plant through her work. The trial court was entitled to accept this explanation and to conclude that the advances and payments were in the nature of loans, rather than gifts and commissions, as husband claims. Husband, whose loans from his sister and parents were similarly not included in his gross income, offers no authority, and we are aware of none, that compels, as a matter of law, the inclusion of a loan in a party's gross income under Code § 20-108.2(C). Instead, husband argues that, if wife is unable to reimburse her male friend for the advances against commission, those advances will become gifts and commissions. The record, however, contains no indication that the advances will not be repaid by wife upon receipt of her commission.

Accordingly, we cannot say the trial court abused its discretion by not including the financial help wife received from her friend in wife's gross income.

### 2. Husband's child support for his other children

Code § 20-108.2(C)(4) provides as follows:

> Where there is an existing court or administrative order or written agreement relating to the child or children of a party to the proceeding, who are not the child or children who are the subject of the present proceeding, then there is a presumption that there shall be deducted from the gross income of the party subject to such order or written agreement, the amount that the party is actually paying for the support of a child or children pursuant to such order or agreement.

Thus, in calculating the presumptive amount of child support under the guidelines, the trial court generally must deduct the amount of child support that a party is actually paying for children from a previous marriage from the gross income of that party.

- 19 -

Here, husband reported at the hearing that he paid child support for his children from a previous marriage. He testified that "his child support obligation was $650 per month" but, "unable to pay that support regularly," he had only "paid, on average, $300 per month toward their support."

The trial court acknowledged husband's $650 per month support obligation for his other children but made no reduction in husband's gross income based on that obligation, explaining that, by his own admission, husband was "not actually paying that support . . . and under Code [§] 20-108.2 . . . that amount is deducted from his gross income only if he's . . . 'actually paying' . . . the support." The court added, "I understand he's paying what he can, but it's certainly not [$650] a month."

It is clear from the trial court's statement that it "underst[ood husband was] paying what he [could]" that the trial court accepted husband's undisputed testimony that he was paying an average of $300 per month in child support for his other children. It is also clear, from the court's other statements regarding the issue, that it made no deduction to husband's gross income based on his payment of support for his other children because husband was "not actually paying" his court-ordered child support obligation of $650 per month in full. The presumption set forth in Code § 20-108.2(C)(4), however, is not conditioned upon the obligor paying the full amount of child support required by the order or agreement. Rather, the presumption arises when, as here, there is an existing order or written agreement requiring a party to the instant proceeding to provide support for his other children. Unless rebutted, the presumption requires the court in the instant proceeding to deduct from the gross income of that party "the amount that the party is *actually paying* for the support" of his other children—$300 per month by husband in this case.

We conclude, therefore, that the trial court applied the wrong standard in deciding not to deduct from husband's gross income the amount he was actually paying in child support for his

other children. Accordingly, we reverse the child support award and remand for reconsideration in accordance with the provisions of Code § 20-108.2(C)(4).

### 3. Accounting for spousal support

Code § 20-108.2(C)(4) provides that, for purposes of determining the parties' gross incomes under the statute, "spousal support received shall be included in gross income and spousal support paid shall be deducted from gross income when paid pursuant to an order or written agreement." Thus, in calculating the presumptive amount of child support under the guidelines, the trial court "must include spousal support in the gross income of the receiving spouse and must deduct the amount of spousal support from the gross income of the paying spouse." Frazer v. Frazer, 23 Va. App. 358, 381, 477 S.E.2d 290, 301 (1996).

Here, the trial court, after granting husband's motion for reconsideration, redetermined the child support award, taking into account the court's earlier spousal support award. However, the trial court failed, at the time, to redetermine the presumptive amount of child support under the guidelines using the gross incomes of the parties adjusted, pursuant to Code § 20-108.2(C)(4), for the spousal support award.

Because we remand this case for reconsideration of the child support award in compliance with Code § 20-108.2(C)(4), we need not address this issue further.

### III. CONCLUSION

For these reasons, we affirm the trial court's judgment in part, reverse the trial court's judgment in part, and remand for further proceedings consistent with this opinion.

Affirmed in part,
reversed in part,
and remanded.