COURT OF APPEALS OF VIRGINIA

Present:   Judges Beales, McCullough and Senior Judge Clements
Argued at Alexandria, Virginia


FAYSAL M. ZEDAN

                                                  OPINION BY
v.      Record No. 1800-12-4         JUDGE RANDOLPH A. BEALES
                                                       MAY 7, 2013

SYLVIE E. WESTHEIM, F/K/A
 SYLVIE ZEDAN


FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Brett A. Kassabian, Judge

J. Thomas Fromme, II (The Law Offices of J. Thomas Fromme, II,
PC, on briefs), for appellant.

Ryan M. Witkowski (The Condo Law Group, P.C., on brief), for
appellee.


Faysal M. Zedan (father and appellant) appeals the Circuit Court of Fairfax County's

September 21, 2012 order, which ordered the release of an appeal bond[1] in the amount of

$221,610.30 to Sylvie Westheim (mother and appellee).  The trial court has withheld the actual

release of these funds (which pertained to father's prior appeal from the trial court to this Court),

pending father's current appeal to this Court in the present matter.  For the following reasons, we

---

[1]        The term appeal bond is now used generically.  Formerly,
the term appeal bond referred to a bond to pay court costs;
supersedeas bond referred to a bond to pay the judgment;
suspending bond referred to a supersedeas bond given before the
appeal was perfected; and double barrel bond referred to a bond to
pay the judgment and court costs.

William H. Bryson, Bryson on Civil Procedure § 17.04[5] (4th ed. 2005).  Because "appeal
bond" is now used generically, we use the general term "appeal bond" throughout this opinion.

affirm the trial court's September 21, 2012 order, and we direct the release of the appeal bond[2] funds in the amount of $221,610.30 to mother.

## I. BACKGROUND

Father and mother were married in New York in June of 1995. Three children were born to father and mother. The parties separated on April 1, 2003 (at which time they were both living in Virginia). Father is a Saudi Arabian citizen, and mother is an American citizen. The parties' final decree of annulment on the ground of bigamy was entered on January 24, 2006.

### November 21, 2011 Trial Court Order & January 2012 Appeal Bond

The initial hearing that is pertinent to the appeal bond issue in this matter arose upon mother's rule to show cause to enforce the final decree of annulment and father's motion to vacate the final decree of annulment. On November 21, 2011, the trial court (1) denied father's motion to vacate; (2) found father in civil contempt for having amassed a significant child support arrearage; (3) determined the child support arrearage to be $205,140.72, but awarded father a credit of $25,758 (for having made school tuition payments in that amount), leaving an arrearage of $179,382.72; and (4) awarded mother attorneys' fees in the amount of $7,027.50. Father appealed the November 21, 2011 order to this Court.

On January 12, 2012, the trial court granted father the opportunity to post a suspension bond pursuant to Code § 8.01-676.1(C), thereby suspending execution of the judgment expressed in the November 21, 2011 order pending father's appeal. Consistent with the terms of the trial court's January 12, 2012 suspension bond order, father posted an appeal bond of $281,594.83. The amount of the appeal bond was calculated as follows: "(1) $186,410.22 being the sum found due and owing by Judge Kassabian; and (2) Interest at 6% per annum on the above sum for 12

---

[2] The terms and conditions of this appeal bond – which pertained to the appeal from the trial court's earlier order of November 21, 2011 – were set by the trial court on January 12, 2012, and the bond was posted by father on January 18, 2012.

months; and (3) 12 months of child support at $7,000 per month with the appeal anticipated to be 1 year." Father posted the appeal bond on January 18, 2012.

August 7, 2012 Opinion of this Court

On August 7, 2012, on appeal from the trial court's November 21, 2011 order, this Court affirmed the trial court in part, reversed the trial court in part, and remanded the matter to the trial court for further proceedings. See Zedan v. Westheim, 60 Va. App. 556, 564-65, 729 S.E.2d 785, 789 (2012).[3] This Court reversed the trial court's finding of contempt against appellant "on the ground that no evidence establishes that father ever received notice of the decree of annulment that establishes father's child support obligation." Id. at 564, 729 S.E.2d at 789. However, mother otherwise prevailed in that first appeal between the parties, particularly as to the existence of a significant child support arrearage owed by father. Pertinent to the present appeal, this Court held:

> [T]he failure to provide father with notice of the proposed entry of the decree of annulment does not render the annulment decree void *ab initio*. Therefore, father may not collaterally attack the annulment decree more than five years after it became final. Finding the decree to be valid, we reject father's remaining assignments of error, and remand for further proceedings to determine *how* father should be brought into compliance with the child support provisions of the annulment decree.

Id. at 564-65, 729 S.E.2d at 789 (emphasis added). Furthermore, this Court reversed the award of a credit toward father's child support obligation based on tuition payments, and expressly restored the child support arrearage owed by father to $205,140.72. Id. at 564, 583, 729 S.E.2d at 789, 798.

As reflected in the excerpt of this Court's opinion that is quoted above, the matter was remanded to the trial court solely "for further proceedings to determine *how* father should be

---

[3] Mother had been awarded attorneys' fees in the amount of $7,027.50 in the original trial, but father did not appeal those attorneys' fees.

brought into compliance with the child support provisions of the annulment decree." Id. at 564, 729 S.E.2d at 789. This Court also stated, "[b]ecause we are remanding, we leave the *manner* of enforcing the decree in the capable hands of the trial court." Id. at 580 n.13, 729 S.E.2d at 797 n.13 (emphasis added).

<u>Trial Court's September 21, 2012 Order on Remand from this Court</u>

On remand from this Court's decision in the first appeal between the parties, father's counsel filed a notice and motion on August 23, 2012 for the release of the bond that he had posted for that appeal. Father also filed a praecipe docketing the motion for a hearing on August 31, 2012 and requested that Judge Kassabian, the trial judge from the initial hearing of November 21, 2011, hear the motion. Mother's counsel then filed a motion for the release of the appeal bond to her and for other relief on August 24, 2012. The parties' motions were heard by the trial court on September 21, 2012.

The trial court's written order dated September 21, 2012, which was entered by Judge Kassabian, states in pertinent part that it is "ADJUDGED, ORDERED, and DECREED that . . ."

> 3. The amount of $205,140.72, plus interest, for child support arrearages shall be released to Plaintiff.
> 4. The amount of $7,027.50, plus interest for attorneys' fees shall be released to Plaintiff.
> 5. The interest for the child support arrearage totals $9,231.30. The interest for the attorneys' fees totals $210.78.
> 6. Defendant's Motion for this Court to hold the entire bond pending the appeal of this Order by the Defendant is denied.
> 7. The remainder of the bond shall be released to Defendant.

Thus, on remand from this Court's decision in the first appeal between the parties, the trial court ordered the release to mother of $221,610.30 from the appeal bond that father had posted for that appeal – i.e., the amount that the trial court determined that father owed mother for the child support arrearage, attorneys' fees, the interest thereon, and the child support due for the anticipated length of the appeal. Father now appeals the trial court's September 21, 2012

- 4 -

order, which denied his request for the release and refund to him of the entire appeal bond that he had posted for the first appeal between the parties.[4]

## II.  ANALYSIS

### A.  ASSIGNMENTS OF ERROR 1, 2 & 5:  REFUSAL TO RELEASE APPEAL BOND TO FATHER

In his first, second, and fifth assignments of error, father argues that the trial court erred in various respects when it refused to release the appeal bond to him.  As an initial matter, we note that issues relating to the trial court's enforcement of the final decree's child support provisions (the arrearages of which were secured in the appeal bond that father now seeks to reclaim) were remanded by this Court on August 7, 2012 for the trial court to determine in its own discretion.  See Zedan, 60 Va. App. at 564, 729 S.E.2d at 789.  Accordingly, such issues are reviewed under an abuse of discretion standard.  See Joynes v. Payne, 36 Va. App. 401, 426, 551 S.E.2d 10, 22 (2001).  Any issues of statutory interpretation raised in these assignments of error are questions of law and are reviewed *de novo*.  Ford Motor Co. v. Gordon, 281 Va. 543, 549, 708 S.E.2d 846, 850 (2011).

Code § 8.01-676.1(C) addresses a party's posting of an appeal bond for the purpose of suspending the execution of a judgment or award during an appeal.  For the reasons explained below, we hold that the trial court did not err under Code § 8.01-676.1(C) when it ordered $221,610.30 of the appeal bond funds at issue here to be released to mother.  In fact, the trial court acted appropriately, given this Court's instructions on remand, and its decision is consistent with the well-established purpose of an appeal bond.

Code § 8.01-676.1(C) reads in pertinent part,

> An appellant who wishes execution of the judgment or award from
> which an appeal is sought to be suspended during the appeal shall,

---

[4] Although the trial court also initially denied father's request that it continue to hold the appeal bond pending this appeal, the record reflects that the appeal bond has not actually been released to mother.

subject to the provisions of subsection J, file an appeal bond or irrevocable letter of credit conditioned upon the performance or satisfaction of the judgment and payment of all damages incurred in consequence of such suspension, and except as provided in subsection D, execution shall be suspended upon the filing of such security and the timely prosecution of such appeal.

"[A] decree or order requiring the payment of money, shall have the effect of a judgment." Code § 8.01-426. "The entry of an order or decree of support for a spouse or for support and maintenance of a child under the provisions of this chapter of §§ 20-107.1 through 20-109 shall constitute a final judgment for any sum or sums in arrears." Code § 20-78.2.

Here, the trial court appropriately entered an appeal bond, in large part to suspend the child support arrearages judgment pending appeal. On January 12, 2012, the trial court entered an order permitting the suspension of the execution of that judgment during the pendency of the first appeal between these parties. The order states in pertinent part:

> ADJUDGED, ORDERED AND DECREED that the Defendant shall be entitled to post with the Clerk of the Court a suspension bond, pursuant to Section 8.01-676.1.C in the sum of $281,594.83 to pay all damages, costs, and fees which may be awarded against him in the Court of Appeals and upon the posting of such suspension bond with the Clerk of the Court by the Defendant, execution of the judgment awarded by this Court on November 21, 2011 shall be suspended during pendency of the Defendant's prosecution of his appeal in this matter to the Court of Appeals of Virginia.

First, father contends that the trial court has now erred in not releasing the appeal bond to him because "the bond was posted solely to pay all damages, costs, and fees which may be awarded against [him] in the Court of Appeals, and the Court of Appeals made no such award." Brief of Appellant at 4, 8. However, this Court did not need to enter any *new* awards against father. The trial court had already determined the amount of the child support arrearage, and this Court plainly restored that arrearage when it stated, "we restore the arrearage owed by father to $205,140.72, which is the amount the trial court concluded father owed prior to awarding father credit for the tuition payment." Zedan, 60 Va. App. at 583, 729 S.E.2d at 798. This Court

actually *increased* the award father owed to mother by not awarding father credit for the children's tuition payments that he made.

Second, father argues that the appeal bond's purpose is to secure payment of all damages incurred in consequence of the suspension and that, at the time of hearing of his motion for release of the appeal bond, mother had not sustained any loss or damages because there was no asset of father's on which she could have obtained execution (because he did not have assets in the United States) during the pendency of his appeal. Father misunderstands the purpose of an appeal bond – which the Supreme Court of Virginia has expressly defined accordingly: "The purpose of [Code § 8.01-676.1(C)] is to secure payment of the full judgment amount and all damages incurred as a result of the suspension of execution of the court's decree." Tauber v. Commonwealth ex. rel. Kilgore, 263 Va. 520, 545, 562 S.E.2d 118, 132 (2002).[5] The trial court ordered the appeal bond here to secure payment of the full child support arrearages judgment incurred as a result of the suspension of the execution of the trial court's November 21, 2011 order. Accordingly, the trial court's September 21, 2012 order (ordering the release of $221,610.30 of the appeal bond to mother) reflects a proper understanding of the reason for the

---

[5] Moreover, the Supreme Court has recently reaffirmed the purpose of Code § 8.01-676.1(C):

> "A lesser amount would undermine the security of the judgment to which a prevailing party is entitled in the event that an appellant does not succeed on appeal." [Tauber, 263 Va. at 545, 562 S.E.2d at 132]. Additionally, this Court has held that a supersedeas bond "is one of indemnity, the object of which is to secure to a successful litigant the ultimate fruits of his recovery, in whole or in part, and to insure him against loss from the possible insolvency of his debtor, or from other cause, pending the appeal." National Surety Co. v. Commonwealth, 125 Va. 223, 228, 99 S.E. 657, 658 (1919).

Henderson v. Ayres & Hartnett, P.C., ___ Va. ___, ___, ___ S.E.2d ___, ___ (Apr. 18, 2013).

- 7 -

appeal bond that is consistent with the clear purpose of an appeal bond, as it is expressed in Code § 8.01-676.1(C) and as it has been explained by the Supreme Court.

Third, father further argues that mother was not a successful litigant in the appeal addressed by this Court on August 7, 2012, and, therefore, she is not entitled to the appeal bond. Father contends that, because the trial court's judgment regarding his civil contempt conviction was not sustained by this Court, it "effectively meant there was no outstanding judgment upon which the mother was entitled to any portion of the father's suspension bond as 'damages, costs or fees.'" Brief of Appellant at 12. However, father ignores the fact that mother was successful in all other material aspects of the first appeal to this Court – except for the civil contempt conviction. Thus, mother was successful in all aspects of the present appeal upon which the appeal bond is based – i.e., the child support provisions of the decree of annulment. Father *could have* appealed just the contempt conviction, but he chose to appeal both the contempt conviction and the child support arrearages award. By doing so, father essentially assumed the risk that he would lose the appeal bond, including the amount due in child support arrearages, if he lost his appeal of the child support arrearages award. Father clearly did not prevail in this Court on the child support arrearages issue, and he is now bound by this Court's decision on that issue.

Fourth, father argues that this Court's August 7, 2012 opinion remanded the case so that the trial court may determine how the child support provisions should be enforced, *if at all*. However, father's understanding of that opinion from this Court is simply incorrect. This Court plainly affirmed the trial court's holding that the decree of annulment and its child support provisions is not a void decree and not subject to collateral attack. This Court only changed the trial court's judgment with respect to the arrearage father owed in order to *increase* the amount of the arrearage (after reversing the trial court's school tuition credit that had been given to father). This Court remanded the matter to the trial court to determine *how* to enforce the child

support provisions – <u>not</u> *whether* to enforce the child support provisions. Specifically, this Court stated, "[w]e remand our decision to the trial court so that the court may, in its discretion, determine *how* the child support provisions of the decree of annulment should be enforced." <u>Zedan</u>, 60 Va. App. at 584, 729 S.E.2d at 799 (emphasis added).[6]

Furthermore, father's argument is inconsistent with a plain reading of this Court's August 7, 2012 opinion. In that opinion, this Court included no language even hinting that release of the appeal bond should be prohibited, and it certainly did not make the appeal bond disappear. Instead, this Court's opinion repeatedly stated its reasons for remand, and it expressly stated that the child support arrearage was restored. Moreover, given that father had not paid any child support since November 2011, it would be illogical and unreasonable to simply erase the appeal bond, which was created to secure the child support arrearages award that father was appealing.

In addition, the remedy father seeks would lead to an absurd result under Code § 8.01-676.1(C). <u>See</u> <u>Meeks v. Commonwealth</u>, 274 Va. 798, 802, 651 S.E.2d 637, 639 (2007) (stating "a statute should never be construed in a way that leads to absurd results"). Acceptance of father's argument would guarantee that, *regardless of the outcome of the appeal*, he would receive the money from the appeal bond. According to father's argument, if he prevailed on the child support issue, he should have received the appeal bond – *and* if he lost on the child support issue (as he did here), he is also entitled to the appeal bond. This is an absurd result, which is plainly inconsistent with the Supreme Court's express explanation in <u>Tauber</u> of the purpose of an appeal bond under Code § 8.01-676.1(C).

---

[6] This Court stated its reason for remand multiple times throughout its opinion. It concluded that "while we reverse the finding of contempt, we remand for the trial court *to enforce as it deems appropriate* the valid decree of annulment, including its child support provisions." <u>Id.</u> at 580, 729 S.E.2d at 797 (emphasis added). This Court also stated, "[b]ecause we are remanding, we leave the *manner* of enforcing the decree in the capable hands of the trial court." <u>Id.</u> at 580 n.13, 729 S.E.2d at 799 n.13 (emphasis added).

Under the law of the case doctrine, because father never appealed the attorneys' fees, which the trial court awarded mother on November 21, 2011 (in the amount of $7,027.50), he cannot challenge them now, after he had the opportunity to do so. Accordingly, the full judgment amount is $212,168.22 (which includes the $7,027.50 in attorneys' fees and the child support arrearage which this Court increased on appeal from $179,382.72 to $205,140.72). Because mother prevailed on the amount of the judgment, she is entitled to interest as damages. See Code § 8.01-682.[7] The interest for the child support arrearage is $9,231.30, and the interest for the attorneys' fees is $210.78. Because the purpose of Code § 8.01-676.1(C) is to secure payment of the full judgment amount, the appeal bond may be executed on the judgment. Thus, we hold that the trial court appropriately released $221,610.30 from the appeal bond to mother and did not err in ordering its release on September 21, 2012. See Code §§ 8.01-682, 8.01-685.[8]

## B. ASSIGNMENT OF ERROR 3: FATHER'S "BUT FOR" ARGUMENT

In his third assignment of error, father argues that the trial court erred in not releasing the appeal bond to him because mother failed to prove that "but for the posting of the bond, [she] would have collected the child support sums alleged to be due and owing." Brief of Appellant at

---

[7] Code § 8.01-682 states in pertinent part,

> When any judgment is affirmed, damages shall be awarded to the appellee. When the judgment is for the payment of money, the damages shall be the interest to which the party is legally entitled from the date of filing the notice of appeal until the date the appellate court issues its mandate.

[8] Code § 8.01-685 states in pertinent part,

> If the judgment of the lower court or tribunal is affirmed, in whole or in part, by the decision of an appellate court, execution or other appropriate process may issue thereon against the principal and surety on any appeal bond which may have been given, for the amount of such judgment, including the interest and cost and the damages awarded by the appellate court, not exceeding, however, the penalty of such bond.

3, 15.[9]  Father relies on older cases, such as the 1927 decision in <u>Jacob v. Commonwealth</u>, 148

Va. 236, 242, 138 S.E. 574, 576 (1927), where the Supreme Court of Virginia applied statutory

language that has long since been amended in explaining:

> The purpose of the statute in requiring a suspending bond is to protect the plaintiff against any loss or damage he may sustain by reason of the suspension of his right to proceed with the collection of his judgment against the defendant. *In an action on the suspending bond, the burden is on the plaintiff to prove, by a preponderance of the evidence, that but for the bond he could have collected his judgment.* <u>Budowitz v. Commonwealth</u>, 136 Va. 227, 234, 118 S.E. 238[, 240 (1927)].

(Emphasis added).  Father believes that, under the reasoning of <u>Jacob</u>, mother had a mandatory

burden to prove by a preponderance of the evidence that, *but for* the appeal bond, she would

have collected her child support arrearages judgment.  Father contends that the trial court did not

require such a showing and that mother never presented any evidence to satisfy such a burden at

the September 21, 2012 hearing.

However, father simply misapplies <u>Jacob</u>.  That case is factually distinguishable from this

one.  <u>Jacob</u> is not even remotely on point with the facts of this case because <u>Jacob</u> involved a

judgment against a company that was later declared bankrupt (unlike here, there were no funds

or assets remaining) and addressed the issue of whether the jury erred in executing the judgment

against the company when it had been declared bankrupt.  Accordingly, <u>Jacob</u> certainly does not

support a conclusion that the appeal bond funds here should be released to father.  Furthermore,

the Supreme Court in <u>Jacob</u> interpreted an older version of the Code that has since been amended

by the General Assembly.

---

[9] To the extent that father raises an issue of statutory interpretation, that issue is reviewed *de novo*. <u>Ford Motor Co.</u>, 281 Va. at 549, 708 S.E.2d at 850.  In addition, "the judgment of the trial court shall not be set aside unless it appears from the evidence that such judgment is plainly wrong or without evidence to support it."  Code § 8.01-680.

Father's argument relies on interpretation of a statement in <u>Jacob</u> which interpreted *former* Code § 6338 (1919) to require proof from the plaintiff by a preponderance of the evidence, that, "but for the bond he [or she] could have collected his [or her] judgment." <u>Jacob</u>, 148 Va. at 242, 138 S.E. at 576. However, the "but for" language from <u>Jacob</u> that father relies on here was based on a previous version of Code § 6338. Indeed, the 1919 version of former Code § 6338 that the Supreme Court interpreted in <u>Jacob</u>[10] substantially differs from the presently applicable appeal bond statute, Code § 8.01-676.1(C). Code § 8.01-676.1(C) requires an appellant who desires to suspend the execution of judgment to file an appeal bond "*conditioned upon the performance or satisfaction of the judgment* and payment of all damages incurred in consequence of such suspension." (Emphasis added). The 1919 version of former Code § 6338 instead described the bond as "providing for the payment of all such damages as may accrue to any person by reason of said suspension." Thus, the plain language of the 1919 version of former Code § 6338 did not expressly require the bond to be conditioned upon the performance or satisfaction of the judgment, as Code § 8.01-676.1(C) now expressly requires.[11] However, as the Supreme Court explained in its 2002 decision in <u>Tauber</u>, an appeal bond under the current Code § 8.01-676.1(C) is "the security of the judgment to which a prevailing party *is entitled* in the event that an appellant does not succeed on appeal." <u>Tauber</u>, 263 Va. at 545, 562

---

[10] The Supreme Court stated in <u>Jacob</u> that "[t]he purpose of the statute in requiring a suspending bond is to protect the plaintiff against any loss or damage he may sustain by reason of the suspension of his right to proceed with the collection of his judgment against the defendant." 148 Va. at 242, 138 S.E. at 576. The bond in <u>Jacob</u> was "conditioned according to law, to 'pay all such damages as may accrue to any person by reason of said suspension, in case a supersedeas to said judgment shall not be allowed, and be effectual within the time above specified." <u>Id.</u> at 239, 138 S.E. at 575 (citing Code § 6338 (1919)).

[11] Under current law, Code § 8.01-676.1(C) and Code § 8.01-685 allow execution on an appeal bond for the amount of a judgment, including the interest, cost, and damages awarded by the appellate court. Code § 8.01-676.1(C) and Code § 8.01-685 *do not* require any proof that – but for the bond – the party could have collected the judgment.

S.E.2d at 132 (emphasis added). Father, the appellant, did not succeed in his prior appeal challenging the child support arrearage. Thus, mother, the prevailing party on the relevant issues, is entitled to the appeal bond.

Appeal bonds allow appeals to move forward, while protecting the appellee's interest should the appellant fail on appeal. Here, father essentially had three options before him in the trial court: (1) pay the child support arrearage, (2) remain in jail under a civil contempt order for failing to pay the child support arrearage, or (3) file an appeal to this Court challenging the child support arrearage (and pay an appeal bond as security for that appeal). Father chose the third option, bringing about his first appeal to this Court. He lost on the issues on which the appeal bond focused, i.e. child support arrearages. Thus, he appropriately lost the appeal bond, (i.e., the amount of it necessary to cover the judgment including interest against him) and the trial court did not err in ordering $221,610.30 from that appeal bond to be released to mother.

## C. ASSIGNMENT OF ERROR 4: DUE PROCESS

Father argues that the trial court erred in not affording him due process (after he was not given notice of the final decree of annulment). Father contends that he was entitled to an opportunity to rectify the arrearage prior to his incarceration and the trial court's awarding a portion of the appeal bond to mother. This assignment of error raises a question of law that is reviewed *de novo*. Ford Motor Co., 281 Va. at 549, 708 S.E.2d at 850.

Father cites this Court's holding in the August 7, 2012 opinion: "[w]e remand our decision to the trial court so that the court may, in its discretion, determine *how* the child support provisions of the decree of annulment should be enforced." Zedan, 60 Va. App. at 584, 729 S.E.2d at 799 (emphasis added). He argues that principles of due process required the trial court to conduct a hearing to determine the manner in which the child support provisions should be enforced *if at all* against father. Because father claims that he was not given an opportunity to be

- 13 -

heard, he argues the trial court's September 21, 2012 order should be vacated and the appeal bond should be returned to him. See Etheridge v. Medical Center Hospitals, 237 Va. 87, 97, 376 S.E.2d 525, 529-30 (1989) (explaining that "[t]he due process clauses of the Federal and Virginia Constitutions provide that no person shall be deprived of life, liberty, or property without due process of law[,] U.S. Const. amend. XIV, § 1; Va. Const. art. I, § 11," and stating that "[p]rocedural due process guarantees a litigant the right to reasonable notice and a meaningful opportunity to be heard").

However, father and his counsel were present and participated in the November 21, 2011 hearing in which the child support arrearage was initially determined. Father appealed that ruling, and this Court increased the arrearage in its August 7, 2012 opinion. Father's counsel participated in the appeal. On remand, father's counsel docketed the hearing with the trial court. In father's praecipe/notice, he requested that Judge Kassabian hear his motion. Although father did not personally attend the September 21, 2012 hearing in the trial court, his counsel was present and argued on father's behalf at that hearing. Father was given an opportunity to be heard at the hearing on September 21, 2012, in which the parties argued over *how* the appeal bond (which primarily secured the child support arrearage) would be distributed. Father's counsel took the position (which he now takes in this appeal) that the bond should be returned to father. The trial court did not prohibit counsel for father from arguing about the arrearage at the hearing. After hearing arguments from counsel for both parties, the trial court acted in its discretion (and consistently with this Court's instructions on remand) to order the release of the appeal bond.

Given these circumstances, we hold that due process certainly was not denied to father. See Lockhart v. Baxter, 12 Va. App. 600, 604, 405 S.E.2d 434, 437 (1991).

- 14 -

D. APPELLATE ATTORNEYS' FEES

Mother requests attorneys' fees and costs for this appeal. "The appellate court has the opportunity to view the record in its entirety and determine whether [an] appeal is frivolous or whether other reasons exist for requiring additional payment." O'Loughlin v. O'Loughlin, 23 Va. App. 690, 695, 479 S.E.2d 98, 100 (1996). Upon consideration of the record on appeal, we find that father's appeal this time is so lacking in merit that it warrants an award of attorneys' fees and costs. See Gottlieb v. Gottlieb, 19 Va. App. 77, 95, 448 S.E.2d 666, 677 (1994). Therefore, mother is entitled to an award of attorneys' fees and costs incurred on appeal for the successful litigation of this appeal. Accordingly, we will remand the case to the trial court for ascertainment and award of appellate attorneys' fees and costs, before releasing any remainder of the appeal bond to father.

III. CONCLUSION

For the foregoing reasons, we affirm the trial court's order of September 21, 2012.[12] Therefore, we remand this matter to the trial court with instructions to release to mother $221,610.30 from the appeal bond that father posted in the trial court. On remand, the trial court shall also determine the appropriate amount of appellate attorneys' fees to be awarded to mother for the successful litigation of this appeal.

Affirmed and remanded.

---

[12] Because we have decided that mother prevails on the merits of the assignments of error in this appeal, we do not address mother's argument that the fugitive disentitlement doctrine applies.