COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Judges Humphreys, Chafin and AtLee
Argued at Lexington, Virginia


PETER ANTHONY DELUCA
                                            MEMORANDUM OPINION* BY
v.        Record No. 1560-18-3              JUDGE RICHARD Y. ATLEE, JR.
                                            MAY 21, 2019
TRACIE ONDICH DELUCA


FROM THE CIRCUIT COURT OF AMHERST COUNTY
J. Michael Gamble, Judge Designate

Seth C. Weston (Law Office of Seth C. Weston, PLC, on briefs), for
appellant.

Brian R. Moore (The Moore Law Firm, PLLC, on brief), for
appellee.


Peter Anthony DeLuca ("husband") appeals the decision of the Circuit Court of Amherst

County ("trial court") that held him in contempt of court for failure to pay spousal support to

Tracie Ondich DeLuca ("wife").[1]  On appeal, husband assigns twelve errors to the trial court's

ruling.  Additionally, wife sets forth three assignments of cross-error.  For the reasons that

follow, we affirm in part and reverse in part.

I. BACKGROUND

"[W]e view the evidence in the light most favorable to the prevailing party, granting it the

benefit of any reasonable inferences."  Congdon v. Congdon, 40 Va. App. 255, 258 (2003).

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] We recognize that "former husband" and "former wife" would be more accurate, but we
use less cumbersome titles in this memorandum opinion for ease of reference.

Husband and wife married on October 3, 1992. On January 25, 2008, husband and wife entered into a property settlement agreement ("PSA"). The parties legally divorced on January 3, 2013, and the PSA was incorporated into, but not merged with, the final decree of divorce.

Relevant to this appeal, the PSA requires husband to pay the mortgage on the marital home, which was to be titled solely in wife's name. Paragraph 4 of the PSA states that "[h]usband shall support [w]ife in the manner to which she is accustomed and is currently being supported, recognizing the need of [w]ife to educate and nurture [the child]." Paragraph 6 provides that wife

> shall receive a fifty-percent (50%) share of all of [h]usband's military retirement pay and benefits. She shall be entitled to her legal share of any and all additional pay and benefits due her, having been in the marriage for more than fifteen years of [h]usband's active-duty service time for retirement.

Additionally, the parties agreed that each party would pay his or her own attorney's fees.

## A. Events Leading to the First Appeal - DeLuca 1

On May 28, 2013, wife filed a motion to show cause, alleging that husband had failed to comply with the spousal support obligations in the PSA and a declaratory judgment action asking the trial court to interpret the PSA. Because the PSA did not set a specific dollar amount of spousal support, the trial court ordered an evidentiary hearing to allow it to perform a retrospective analysis to determine whether husband had complied with the PSA.

After hearing the evidence, the trial court determined that the relevant time period was the year prior to the parties entering the agreement. During that time, wife received an average of $4,373 each month in support from husband. Thus, the trial court concluded $4,373 was the amount the parties intended as the spousal support obligation under the PSA. Husband paid less than that each month from May 4, 2010 through April 1, 2014, and, relying on the numbers in an exhibit presented by wife, the trial court set the arrearages at $121,976.

The trial court asked wife's attorney to prepare an order consistent with its ruling. The proposed order stated that husband owed "$4,373.00 net per month after taxes" and that husband had failed to meet his support obligation "in the net amount after taxes of $121,976.00." The trial court informed the parties that it had crossed out "after taxes" in both places. The order stated that it was a final order on the issue of support but that the trial court took the issue of contempt under advisement.

Husband appealed to this Court. In an unpublished opinion, a panel of this Court held that the agreement was unambiguous and the plain meaning of the PSA required husband to pay "a sum certain in monthly spousal support."[2] DeLuca v. DeLuca, No. 1158-14-3, at *8 (Va. Ct. App. May 19, 2014) ("DeLuca 1"). It affirmed the trial court's award of $4,373 per month.

### B. Events Leading to the Second Appeal - DeLuca 2

While DeLuca 1 was pending before this Court, husband voluntarily retired from his position with the military. He began receiving his military retirement pay, and, as required under the PSA, wife began receiving $4,608.25 monthly, her fifty-percent share of husband's pension. Simultaneous with his retirement, husband stopped paying spousal support, leading wife to file her second motion to show cause.

Husband argued that he should receive a monthly credit against his spousal support obligation each month for the amount of wife's share of the pension payment. He argued that the spousal support was not supposed to be a sum certain but rather was intended to support a certain lifestyle. According to husband, the parties intended that the retirement payment would replace the spousal support to support wife in that lifestyle. Wife argued that the retirement payment

---

[2] Husband assigned four errors in DeLuca 1. This Court addressed only the first issue, finding that the other three were procedurally defaulted.

was intended as a separate obligation that was part of the equitable distribution of marital assets, not spousal support.

The trial court initially ruled in favor of husband, finding that he was entitled to a credit. The trial court noted that wife's interpretation would result in wife receiving nearly the entire amount of husband's retirement pay, which it deemed a "tortured construction of the agreement."

Wife filed a motion to reconsider. The trial court granted the motion and withdrew its prior ruling, finding that husband was not entitled to a credit because the PSA did not contain language linking the two provisions, nor did it use the word "credit." The trial court noted that it made the ruling "with great reluctance" because the "financial impact doesn't seem right," but that the court was legally bound to enforce the terms agreed upon by the parties.

Additionally, the trial court recalculated the arrearages and stated that husband was not required to pay the state and federal taxes on the spousal support, an issue that arose during the hearing on the motion to reconsider. As it had before, the trial court took the issue of whether husband was in contempt under advisement.

Husband again appealed the decision to this Court. Prior to oral arguments, a panel of this Court asked the parties to provide supplemental briefing on whether it had jurisdiction over the appeal since the trial court did not adjudicate the issue of contempt. Ultimately, the panel determined it did not have subject matter jurisdiction because the trial court's order was not final. The order lacked finality because it took the contempt issue under advisement and thus did not dispose of the whole case. See DeLuca v. DeLuca, No. 1249-16-3, *2 (Va. Ct. App. Mar. 7, 2017) (unpublished order) ("DeLuca 2"). Husband argued that the order in DeLuca 1 similarly lacked finality, but, since the issue was beyond the scope of the appeal, this Court declined to address it.

## C.  Events Leading to the Current Appeal

In response to the ruling in DeLuca 2, husband filed two motions with the trial court.  In the first motion, he asked the trial court to declare DeLuca 1 void *ab initio* for lack of subject matter jurisdiction.  He argued that the DeLuca 1 order contained the same lack of finality as the order in DeLuca 2.  The trial court denied husband's motion, noting that DeLuca 2 was unpublished and did not address DeLuca 1 and therefore did not require voiding DeLuca 1.  Because this Court had addressed the merits in DeLuca 1, the trial court determined that it meant either "explicitly or implicitly . . . the Court felt that it had jurisdiction in that matter."

Husband's second motion asked the trial court for leave to file a late motion for declaratory judgment.  He argued that the declaratory judgment action was necessary because he would have no way to appeal the PSA interpretation rulings if the court did not hold him in contempt.  Husband contends he did not want to relitigate issues; he only wanted the trial court to issue an order incorporating all of its prior orders into the declaratory judgment action.  The trial court denied the motion, deeming it unnecessary to issue an order about orders long since issued.

Wife also filed a third motion to show cause arguing that husband still was not paying spousal support and was also not paying the entire mortgage payment.  On October 18, 2017, the trial court ruled on all three motions to show cause.  The trial court determined husband was not guilty of contempt on the first motion to show cause because he was unaware of the exact amount of support owed.  Nor was he in contempt on the second motion to show cause because he had a good faith legal argument about the retirement pay as a credit against the spousal support and because the opinion in DeLuca 1 had not yet been issued.  The trial court did find husband guilty of contempt on wife's third motion to show cause.  The trial court found that husband's average monthly income was between $10,000 and $11,000 per month.  When he did

not pay spousal support, he had $1,100 left over after his other expenses. Additionally, husband was paying his attorneys $3,000 per month, which could be reduced to meet his support obligation. Although husband may not have been able to pay the entire amount, the trial court determined he could have paid at least some of the support obligation. The trial court sentenced him to thirty days in jail, and it set a hearing to determine husband's current financial circumstances, calculate the arrearages, and establish a payment schedule. If husband paid his obligations from October 2017 through the date of the hearing, the trial court would suspend the jail sentence.

Husband testified at the hearing that he had worked as a consultant for various projects. He presented a spreadsheet showing his income from each consulting job and his retirement pay since 2014. Husband's attorney argued that husband could only afford to pay a few hundred dollars per month towards the arrearages. During his testimony, however, husband stated that he already owed wife about $7,700 per month, and, when it came to arrearages, "he would ask to try and keep th[e combined total] to something under $8,500 per month." The trial court concluded that husband had earned $135,926 from employment over the past eighteen months, which averaged $7,551 per month. Based on the combination of his earned income and retirement pay, the trial court ordered husband to pay $2,000 per month towards the arrearages.

During the hearing, husband pointed out an apparent math error in the calculation of arrearages in the May 22, 2014 order. According to him, the arrearage should have been $91,377.01 rather than the $121,976 that the trial court set—a difference of $30,598.99.[3] Husband argued that the trial court should use its equitable power to apply a credit to the May 22, 2014 arrearage. Wife argued that husband had not objected to the calculation at the time the

_____

[3] The trial court's letter opinion references wife's exhibit E from the 2014 hearing and bases its calculations on the numbers and dates from the that exhibit. Husband's attorney used those numbers to point out what he argued was a mathematical error.

order was entered and that the order was final and had already been affirmed in DeLuca 1. The trial court took that issue under advisement in order to review the documents.

Eventually, the trial court determined that it had made a mathematical error. The trial court awarded husband a credit of $30,598.99 because it was not fair that husband bear the full burden for the miscalculation. But, because husband had not objected at the time and out of fairness to wife, the trial court awarded the credit to the current arrearage, not to the May 22, 2014 arrearage. Wife could then collect interest on the $121,976 arrearage pursuant to Code § 20-78.2, while husband ultimately received the credit. Both parties objected.

At the hearing, husband also argued that interest on the arrearages requires a final order, and he again argued that the May 22, 2014 order was not a final order. Therefore, interest should only apply to the arrearages after the final order of contempt was entered, not from the date the trial court calculated the arrearages in each temporary order. The trial court determined that Code § 20-78.2 allowed interest on the arrearages in orders setting out arrearages if the total arrearage was greater than the total of three months of support. Thus, from April 25, 2014 to March 1, 2016, the arrearages of $121,967 would earn interest at 6%. From March 1, 2016 to October 10, 2017, the updated arrearages of $185,229 would earn interest at 6%. From October 10, 2017 through April 26, 2018, the arrearages of $272,702 would earn interest at 6%. Finally, the trial court calculated the current arrearages, before applying the credit, as $268,080. After subtracting the credit, the arrearages were $237,481.01, and they too would earn interest at 6%.

Finally, wife requested attorney's fees for her efforts to collect arrearages. Husband argued that wife was not entitled to them because the PSA provided that each party would pay their own attorney's fees. Wife argued that Code § 20-78.2 allowed for attorney's fees in attempts to collect arrearages if the arrearages were greater than three months of support. The

trial court agreed.  Noting the PSA, however, the trial court limited its ruling to those fees

accumulated in preparing for the April 26, 2018 hearing on arrearages and ability to pay.

Husband and wife both objected to the final order.  Husband appealed to this Court.

## II. ANALYSIS

### A.  Husband's Assignments of Error

Husband assigns twelve errors to the trial court's ruling.  We address each assignment of

error in turn before addressing wife's assignments of cross-error.

#### 1. *Authority of the Trial Court to Vacate a Court of Appeals Opinion*[4]

In DeLuca 2, a panel of this Court determined it did not have subject matter jurisdiction

to consider an appeal because the trial court's order took the issue of contempt under advisement

and thus was not a final order.  Husband argues that the order in DeLuca 1, which also took the

contempt issue under advisement, is likewise not a final order, and, therefore, the trial court erred

when it refused to declare our opinion in DeLuca 1 void *ab initio* for lack of subject matter

jurisdiction.

"A trial judge is bound by a decision and mandate from this Court, unless we have acted

outside our jurisdiction."  Rowe v. Rowe, 33 Va. App. 250, 257 (2000).  A decision of a court

entered without jurisdiction is a complete nullity and may be "impeached directly or collaterally

by all persons, anywhere, at any time, or in any manner."  Singh v. Mooney, 261 Va. 48, 52

(2001) (quoting Barnes v. Am. Fertilizer Co., 144 Va. 692, 705 (1925)).  The issue here,

however, becomes whether a lower court can determine that a higher court lacked jurisdiction

and then ignore a direct mandate from the higher court.  Husband's position that the trial court

should have declared our opinion void *ab initio* for lack of subject matter jurisdiction is the

---

[4] Because the issue of whether DeLuca 1 is void for lack of subject matter jurisdiction is
not properly before us, we will not address husband's assignments of error three through six, as
those assignments of error were addressed in DeLuca 1.

equivalent of saying that we could ignore a mandate of the Supreme Court of Virginia if we determine that it lacked jurisdiction. The Supreme Court would almost certainly disagree. Although a party may attack an allegedly void judgment, we cannot agree that a lower court, in this case the trial court, is the appropriate forum to attack the jurisdiction (and mandate) of a higher court.[5] Therefore, the trial court did not err in denying husband's motion.[6]

## 2. *Contempt*

Husband next argues that the trial court erred by finding him in contempt because he did not willfully disobey the court order but, instead, he was financially unable to comply.

We review the trial court's exercise of its contempt powers for an abuse of discretion. DHRI, Inc. v. Hanback, 288 Va. 249, 254 (2014). "A trial court may hold a support obligor in contempt for failure to pay where such failure is based on unwillingness, not inability, to pay." Barnhill v. Brooks, 15 Va. App. 696, 704 (1993).

In Barnhill, the support obligations exceeded the obligor's income, and, after borrowing money and filing a motion to reduce his obligations, the obligor stopped paying. 15 Va. App. at 704-05. The trial court did not hold the obligor in contempt. On review, we determined that, "[a]lthough the trial court could, in its discretion, have ruled that the [obligor] should have paid at least a portion of the support due appellant, it did not so hold." Id. at 705.

---

[5] We also note that "a trial judge violates his or her oath of office by willfully refusing to abide by the rulings of an appellate court concerning the very case on appeal from the trial court, regardless of how erroneous the trial judge may consider the appellate ruling to be." Rowe, 33 Va. App. at 258. Given the potential consequences of an incorrect ruling, trial judges should not be in the position of being asked to disregard a direct mandate of a higher court.

[6] To the extent that husband asks this Court to vacate the opinion in DeLuca 1, we decline to do so because it is beyond the scope of this appeal. The assignment of error addresses only whether the trial court erred in refusing to declare DeLuca 1 void. Husband argues that the fact that the issue is styled "as an error by the trial court is of no moment, as that is how all errors must be styled." But, "[e]lementary is the rule of appellate procedure that the scope of argument on appeal is limited by the assignments of error." Dudley v. Estate Life Ins. Co. of Am., 220 Va. 343, 348 (1979). Thus, the finality of the order in DeLuca 1 is not properly before us.

Here, despite an average income between $10,000 and $11,000 per month, and a positive balance of $1,100 after all of his expenses (excluding spousal support) were paid, husband failed to pay *any* spousal support from March 21, 2016 through October 10, 2017. The trial court also noted that husband paid his attorneys $3,000 per month, which could be reduced and, in combination with the $1,100 positive balance, used to meet at least part of his support obligations. The record supports the trial court's finding that husband could have met at least a portion of the support due. As we held in Barnhill, it is within the trial court's discretion to hold that a failure to pay at least some portion of the support due is willful disobedience of a court order. Thus, the trial court did not err.

### 3. *Retirement Pay as a Credit Against Spousal Support*

Husband argues that wife's share of his retirement pay should be credited against his spousal support obligation. He also argues that the contract is ambiguous and that the Court must consider the evidence presented at the hearing to determine the intent of the parties.

We review the trial court's interpretation of the PSA *de novo*. Jones v. Gates, 68 Va. App. 100, 105 (2017). A PSA is a contract "subject to the same rules of construction that apply to the interpretation of contracts generally." Id. (quoting Southerland v. Estate of Southerland, 249 Va. 584, 588 (2017)). "The question for the court is what did the parties agree to as evidenced by their contract." Schuiling v. Harris, 286 Va. 187, 192 (2013) (quoting Wilson v. Holyfield, 227 Va. 184, 187 (1984)). "Where there is no ambiguity in the terms of a contract, we must construe it as written." Smith v. Smith, 3 Va. App. 510, 514 (1986). "Contracts are not rendered ambiguous merely because the parties disagree as to the meaning of the language employed by them in expressing their agreement." Wilson, 227 Va. at 187.

Here the terms are clear and unambiguous.[7] The two paragraphs at issue are entirely separate; they are separately numbered and separately titled. They do not follow immediately after each other, nor do they contain any language linking them together. Paragraph 4, which provides for spousal support, does not contain an end date, reference to a credit, or any reference to modification upon retirement or any other circumstance.[8] Paragraph 6, which provides for the distribution of retirement pay, does not contain any reference or link to paragraph 4. The language of paragraph 6 references wife's "legal share" and her entitlement based on the length of time she was in the marriage. This language suggests paragraph 6 is part of an equitable distribution award rather than a spousal support replacement.

Husband relies on McGuire v. McGuire, 10 Va. App. 248, 252 (1990), where this Court rejected the argument that a federal pension was part of an equitable distribution award and, as such, could not be considered when setting spousal support. That case is inapplicable here. In McGuire, the PSA allowed modification of spousal support by proper motion to the court. The statutory factors in Code § 20-107.1(E) specifically direct a trial court to "consider the needs and financial resources of the parties including but not limited to income from all pension, profit sharing or retirement plans." The PSA here, however, prohibits modification except by

---

[7] Husband argues that the contract is ambiguous because the trial court ruled first one way and then the other. We disagree. Our opinion in DeLuca 1 was issued on September 11, 2014, one month after the trial court's initial ruling about the credit. The trial court later noted that it did not have the record (including the PSA) back from this Court at the time it made the ruling and that it should have waited until it could refer to the PSA to make a ruling.

[8] Husband argues that paragraph 4 only required him to support wife "in the manner to which she is accustomed and is currently being supported," not a set amount, and that the retirement pay was intended to replace support. Because we do not address the validity of DeLuca 1, the ruling that the PSA intended a set amount of spousal support stands and is the law of the case. See Miller-Jenkins v. Miller-Jenkins, 276 Va. 19, 26 (2008) (When "there have been two appeals in the same case, between the same parties, and the facts are the same, nothing decided on the first appeal can be re-examined on a second appeal." (quoting Steinman v. Clinchfield Coal Corp., 121 Va. 611, 620 (1917))).

- 11 -

agreement of the parties.  The trial court was not exercising its discretion to modify support, and, unlike in McGuire, its only job was to interpret the PSA.  There was nothing in the PSA that explicitly, or even implicitly, provided for a credit.

Husband points to the trial court's initial ruling where it stated that it was a "tortured construction" of the agreement for husband to pay more after retirement than before.  Wife will, in fact, get most of husband's pension.  Whatever the subjective fairness of the agreement may be for husband, he agreed to the PSA of his own free will.  We will not "relieve one of the consequences of a contract merely because it was unwise."  Rogers v. Yourshaw, 18 Va. App. 816, 823 (1994) (quoting Derby v. Derby, 8 Va. App. 19, 30 (1989)).  Nor can we "rewrite a contract simply because the contract may appear to reach an unfair result."  Id. (quoting Kaufman v. Kaufman, 7 Va. App. 488, 501 (1988)).

The parties entered this PSA; they chose and agreed to the words it contained.  Now they are bound by them.  There was no reference to a credit, and we will not read into the PSA language that will change the meaning of the words used by the parties.  Wilson, 227 Va. at 187.

4. *Application of the Credit to the Current Arrearage*

Husband assigns error to the trial court's ruling that the $30,598.99 credit applies to the current arrearage rather than to the arrearages in the May 22, 2014 order.  On brief, husband incorporates his arguments for assignments of error six and nine.  Assignment of error six relates to the trial court's authority to award pre-divorce arrearages when there is no specific reservation in the decree.[9]  Assignment of error nine relates to the authority to award interest prior to the

---

[9] Additionally, assignment of error six and its argument are not properly before this Court because, as mentioned above, we do not address whether DeLuca 1 is void *ab initio*.

entry of the final contempt order.[10] These incorporated arguments do not relate to whether the

trial court had authority to apply the credit to an arrearage set out in a final order, which is the

error assigned here. Accordingly, we will not consider them here. See Teleguz v.

Commonwealth, 273 Va. 458, 473 (2007) (ruling an assignment of error was abandoned because

the argument did not relate to the assignment of error).

To the extent husband makes an additional argument beyond the incorporated arguments,

it is a single, conclusory sentence restating the assignment of error and stating that the error is

not harmless. This additional sentence includes no citations or any legal authority as required by

Rule 5A:20. "Such a statement does not constitute an argument in support of the error assigned."

Teleguz, 273 Va. at 473. Accordingly, this assignment of error is abandoned.

5. *Interest on the Arrearages Prior to the Entry of the Final Contempt Order*

Husband argues that the trial court erred by awarding prejudgment interest on the

arrearages. He argues that DeLuca 1 was void *ab initio* and not a valid final order and thus each

of the orders setting the arrearages were temporary orders. Because the finality of the order in

DeLuca 1 is not properly before us, the trial court's May 22, 2014 order remains a final

judgment. Therefore, the trial court did not award prejudgment interest as husband argues.[11]

---

[10] The argument in assignment of error nine mentions that this Court determined it did not have subject matter jurisdiction in DeLuca 2. But there is no explanation of how that relates to this assignment of error.

[11] Even if the May 22, 2014 order preceding DeLuca 1 was not a final judgment, there is nothing in Code § 20-78.2, upon which the trial court relied, that requires a *final* order to award interest on arrearages. Code § 20-78.2 provides that "an order or decree of support for a spouse . . . shall constitute a final judgment for any sum or sums in arrears." Thus, Code § 20-78.2 provides a mechanism for treating an order that sets arrearages as a final judgment for interest purposes. Both the divorce decree and the May 22, 2014 order could be treated as an order allowing interest under this code section. Further, Virginia law consistently views support obligations as final judgments by operation of law when they become due and go unpaid. Code § 20-107.1(H)(6), 20-60.3(14) (a support obligation, child or spousal, becomes a "judgment by operation of law" when it becomes due and goes unpaid); Alig v. Alig, 220 Va. 80, 85 (1979) ("[T]he general rule is that in the absence of factors making it inequitable, interest should be

6. *Monthly Arrearage Payment*

Husband argues that the "trial court erred in setting forth arrearage payment of $2,000 per month as [husband] has shown he cannot financially sustain such payments . . . ."  We disagree.

Issues relating to the trial court's enforcement of a final decree's support provisions are reviewed under an abuse of discretion standard.  See Zedan v. Westheim, 62 Va. App. 39, 44-45 (2013) (applying an abuse of discretion standard to issues relating to the enforcement of child support arrearages).  The trial court's factual findings relating to this issue are binding on us unless they are plainly wrong.  Milam v. Milam, 65 Va. App. 439, 462 (2015).

Husband contends that the trial court found he has a monthly income of $7,551.  He argues that his financial obligation to wife is $7,025.72, and thus he is financially unable to pay an additional $2,000 per month towards the arrearages.  Husband misinterprets the trial court's opinion.  The trial court determined husband's income *from employment* over eighteen months was $135,926, and thus his average *earned* income was $7,551 per month.   When the trial court set the arrearages, it considered "this earned income along with the current monthly income" from his retirement pay (approximately $4,600).  Under these numbers, husbands' average monthly income is closer to an average above $12,000 per month.  These figures come directly from an income spreadsheet husband entered into evidence.  Although the spreadsheet does show his income varies month to month, it ranges from a low of $7,332.40 up to $22,218.82 per month.

Moreover, at the hearing, husband testified that he owed wife approximately $7,700 per month and he "would ask [the court] to try and keep that to something under $8,500 per month" after arrearages were added or he would not be able to pay.  Husband, by his own testimony,

assessed on unpaid installments of alimony from the date they mature or become due until the date they are paid.").

suggests that he can afford up to $800 in arrearages payments, which is significantly more than the several hundred dollars per month his attorney suggests he could afford. The trial court is entitled to consider the evidence, including husband's credibility, and determine the weight to be afforded to each piece of the evidence. See Parham v. Commonwealth, 64 Va. App. 560, 565 (2015) ("[D]etermining the credibility of the witnesses and the weight afforded to the testimony of those witnesses are matters left to the trier of fact."). Given the evidence of husband's income from husband's own exhibit and his testimony admitting he can pay more than he argued to the trial court, we cannot say the trial court erred in setting the arrearage payments at $2,000 per month.

### 7. *Denial of an Extension of Time to File Pleadings*

It is within the broad discretion of the trial court to determine whether to grant an extension of time and permit a late filing. Rule 1:9. "Whether such discretion has been properly exercised will, of course, depend upon the circumstances of the particular case." Westfall v. Westfall, 196 Va. 97, 103 (1954). "Only when reasonable jurists could not differ can we say an abuse of discretion has occurred." Turner v. Commonwealth, 65 Va. App. 312, 327 (2015) (quoting Grattan v. Commonwealth, 278 Va. 602, 620 (2009)). "In determining whether a trial court has abused its discretion by granting or denying leave to file a late pleading, the existence or absence of good cause for the delay, together with other compelling circumstances, control the determination." Emrich v. Emrich, 9 Va. App. 288, 292 (1989). The trial court should consider, among other things, the prejudice to opposing party, the good faith of the moving party, existence of a meritorious claim or defense, and the extenuating circumstances. Id.

Husband lists the relevant factors, but he does not explain how or why each factor weighs in his favor. Our review of the record finds nothing that suggests the trial court abused its discretion. The parties had been litigating this case for four-and-a-half years at the time of the

hearing. It had been before this Court twice. The trial court had long since ruled on the contract interpretation issues. An order incorporating past orders into a new cause of action adds nothing to the case. Despite husband's claims that the declaratory judgment action would be necessary to allow appeal of the contract issues if the trial court did not hold him in contempt, we note that wife's declaratory judgment action was already before the trial court. Given the circumstances, we cannot say the trial court abused its discretion in denying husband's motion.

### 8. *Attorney's Fees*

Husband argues that the trial court erred by awarding wife attorney's fees because their PSA provided that each party would pay its own fees. We agree.

Parties may shift responsibility for attorney's fees through contractual provisions. Jones, 68 Va. App. at 106. Code § 20-109(C) addresses such provisions in divorce cases:

> In suits for divorce, annulment and separate maintenance . . . if a stipulation or contract signed by the party to whom such relief might otherwise be awarded is filed before entry of a final decree, no decree or order directing the payment of . . . counsel fee . . . shall be entered except in accordance with that stipulation or contract.

If a PSA contains an attorney's fee provision, the court must follow the terms of that agreement. Jones, 68 Va. App. at 106.

Paragraph 17 of the PSA provides that "[e]ach party shall pay his or her attorney's fees and that parties shall divide equally the costs of any uncontested divorce proceedings filed by either [h]usband or [w]ife." The parties contemplated the issue of attorney's fees and determined, as evidenced by the plain language of their agreement, that each party shall be responsible for their own attorney's fees. The parties could have, but chose not to, include a provision for attorney's fees in the case of enforcement. See, e.g., Jones, 68 Va. App. at 106-07 (including a provision to allow attorney's fees for successfully defending an action for enforcement); Pellegrin v. Pellegrin, 31 Va. App. 753, 767-68 (2000) (allowing attorney's fees

- 16 -

for a motion to show cause as an "action for enforcement" under the PSA).  Nor did they specify that the fee provision was limited to services pertaining to the final decree of divorce.  We cannot add language for them.  See Wilson, 227 Va. at 187.  Therefore, the trial court is reversed and the award of attorney's fees to wife is vacated.

### B.  Wife's Assignments of Cross-Error

#### 1.  *State and Federal Tax Issues*

Wife argues that the trial court improperly addressed the issue of whether husband was required to pay state and federal taxes because the issue was not properly before the court.  She also contends that the trial court modified its May 22, 2014 ruling, which, she argues, ordered husband to pay the taxes.  We disagree.

Although the issue of tax liability was not expressly raised in the pleadings,[12] all three of wife's motions to show cause put at issue the amount husband owed wife in arrearages.  The May 22, 2014 order required husband to pay wife "$4,373.00 net per month."  Throughout the proceedings, including in wife's motion to reconsider, which was before the trial court at the time the tax issue arose, wife emphasized the use of the word "net."  Thus, in order for the trial court to properly calculate arrearages, specifically whether husband was required to pay more than the $4,373 in order to cover the tax liability, it was necessary for the trial court to address the issue.

Furthermore, the trial court did not modify a prior order.  Rather it interpreted its May 22, 2014 order, and it is a "well-established principle in our jurisprudence . . . that circuit courts have the authority to interpret their own orders."  Roe v. Commonwealth, 271 Va. 453, 457 (2006).

_____

[12] We also note that the September 29, 2016 order, which dealt with the issues from the August 11, 2015 hearing, lists a motion "requesting the [trial c]ourt issue a Rule to Show Cause and hold [wife] in contempt of court for claiming certain federal and state tax credits."  While it does not appear that the trial court issued the rule to show cause, it does show that the issue was before the court and necessary to the arrearage issue.

"We defer to the trial court's interpretation of its own order," Leitao v. Commonwealth, 39 Va. App. 435, 438 (2002), though that interpretation must be reasonable, Roe, 271 Va. at 458.

The May 22, 2014 order was prepared by wife. The proposed order stated husband must pay "$4,373.00 net per month after taxes." Regarding arrearages, the order stated husband had failed to pay "in the net amount after taxes of $121,976.00." Prior to entering the order, the trial court specifically crossed out "after taxes" in both places and clearly and specifically informed both parties it had done so.[13] These edits demonstrate the trial court did not, in fact, order husband to pay the taxes on the spousal support. Wife contends that the word "net" must mean something. We agree, but by crossing out "after taxes," the trial court has told us what it does not mean. Moreover, during the hearing on the amount of spousal support, wife expressly asked the trial court for a higher amount of support in order to cover the taxes, and the trial court refused. Thus, the trial court did not improperly modify its May 22, 2014 order.

## 2. *Arrearage Correction*

Wife argues the trial court erred by giving husband a credit of $30,598.99 for a mathematical error because husband did not object to the miscalculation when it was made and that the order with the alleged error is a final order that was affirmed on appeal. We disagree.

"Although the finality imposed by Rule 1:1 generally governs, there are circumstances in which a trial court may exercise limited jurisdiction beyond the twenty-one-day period." Minor v. Commonwealth, 66 Va. App. 728, 740 (2016). One such example is the exception in Code § 8.01-428(B), which allows the trial court to correct clerical errors.

> Furthermore, as the Supreme Court has recognized, a trial court has "the inherent power, independent of statutory authority, to correct errors in the record so as to cause its acts and proceedings to be set forth correctly. In short, the court has the inherent power,

---

[13] The order ultimately entered by the trial court is the order presented by husband. The trial court's edits are handwritten on the order.

> independent of the statute, upon any competent evidence, to make the record 'speak the truth.'"

Minor, 66 Va. App. at 741 (quoting Davis v. Mullins, 251 Va. 141, 149 (1996)). "Scrivener's or similar errors in the record, which are demonstrably contradicted by all other documents, are clerical mistakes." Zhou v. Zhou, 38 Va. App. 126, 133 (2002). The trial court is restricted "to placing upon the record evidence of judicial action that actually has been taken," and may not do that which it should have done. Jefferson v. Commonwealth, 269 Va. 136, 140 (2005).

We recognize that a math error while calculating arrearages may not always be a clear case of clerical error. Often, the trial court is weighing conflicting evidence in order to determine what a party actually paid, and it may not be evident exactly which amounts it uses or what evidence it relies on. This case, however, falls well within the definition of a clerical mistake. The trial court's May 22, 2014 order, which contains the error, specifically incorporates its letter opinion of April 25, 2014. In the letter opinion, the trial court states exactly which exhibit it used to make its calculations. It states the specific dates it used, which match the listed exhibit, and it explains the calculations made. The referenced exhibit plainly shows that the trial court's error is demonstrably contradicted by the exhibit. See Zhou, 38 Va. App. at 140. Thus, the trial court did not err in correcting a clerical error and awarding husband a credit.

### III. CONCLUSION

For the foregoing reasons, we reverse and vacate the trial court's award of attorney's fees to wife. The trial court is affirmed on all other issues.

Affirmed in part, reversed in part.

- 19 -