COURT OF APPEALS OF VIRGINIA

Present: Judges Russell, AtLee and Senior Judge Frank

NASIR SABIR

v.      Record No. 1866-18-3

ROANOKE CITY DEPARTMENT
 OF SOCIAL SERVICES

MEMORANDUM OPINION*
PER CURIAM
MAY 28, 2019

FROM THE CIRCUIT COURT OF THE CITY OF ROANOKE
J. Christopher Clemens, Judge

(Phillip R. Lingafelt; Glenn, Feldmann, Darby & Goodlatte, on
brief), for appellant.  Appellant submitting on brief.

(Daniel J. Callaghan, City Attorney; Heather P. Ferguson, Assistant
City Attorney; Valeria L. Cook, Guardian *ad litem* for the minor
child, on brief), for appellee.  Appellee and Guardian *ad litem*
submitting on brief.

Nasir Sabir (father) appeals an order terminating his parental rights and approving the goal

of adoption for his child.  Father argues that the circuit court erred by (1) terminating his parental

rights because the Roanoke City Department of Social Services (the Department) denied father "his

due process rights under the Fifth Amendment and Fourteenth Amendment of the United States

Constitution and Article I, Section 11 of the Constitution of Virginia, and under other constitutional

rights" when the Department changed its plans and goals for the child and gave father "less than 60

days notice of the changes" before the Roanoke City Juvenile and Domestic Relations District Court

(the JDR court) terminated his parental rights and approved the goal of adoption; (2) terminating his

parental rights and approving the goal of adoption because there was insufficient evidence to prove

that it was in the child's best interests to terminate father's parental rights and that the conditions

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

UNPUBLISHED

that resulted in the neglect or abuse could not be substantially corrected or eliminated to allow the

child's return within a reasonable period of time; (3) finding that there was sufficient evidence to

terminate father's parental rights under Code § 16.1-283(B); and (4) approving the goal of adoption

and finding that adoption was in the child's best interests because there was insufficient evidence to

support the findings.  Upon reviewing the record and briefs of the parties, we conclude that the

circuit court did not err.  Accordingly, we affirm the decision of the circuit court.

BACKGROUND[1]

"On appeal from the termination of parental rights, this Court is required to review the

evidence in the light most favorable to the party prevailing in the circuit court."  Yafi v. Stafford

Dep't of Soc. Servs., 69 Va. App. 539, 550-51 (2018) (quoting Thach v. Arlington Cty. Dep't of

Human Servs., 63 Va. App. 157, 168 (2014)).

On October 18, 2016, the Department received a complaint alleging that Shakenia

Richardson (mother) had "negative physical contact" with the child, who was seven years old at

the time, and she and the child were being suspended from the Rescue Mission family shelter.

The Rescue Mission also informed the Department that mother had hidden alcoholic beverages

in her room, which was against the rules.  Mother told the Department that she and the child

were going to stay with her friend at a hotel.

The next day, mother called the Department for assistance.  She and the child had not

stayed with her friend at the hotel as reported; instead, she and the child stayed at another hotel

with a man she met at a gas station.  The man dropped off mother, the child, and their belongings

---

[1] The record in this case was sealed.  Nevertheless, the appeal necessitates unsealing relevant portions of the record to resolve the issues raised by appellant.  Evidence and factual findings below that are necessary to address the assignments of error are included in this opinion. Consequently, "[t]o the extent that this opinion mentions facts found in the sealed record, we unseal only those specific facts, finding them relevant to the decision in this case.  The remainder of the previously sealed record remains sealed."  Levick v. MacDougall, 294 Va. 283, 288 n.1 (2017).

outside a restaurant. The Department discussed with mother her housing options. The Department discovered that mother and the child had lived in eight different places in the previous six months. By the end of the day on October 19, 2016, mother was unable to secure housing and agreed to place the child in respite care for up to two weeks.

On October 20, 2016, the Department learned that the child's placement was unsuccessful because the child had exhibited "extreme behavioral issues" and had "seizures." The Department attempted to contact mother multiple times, but was unable to reach her. Father was incarcerated in Pennsylvania, and mother had not provided the Department with any other information about possible relatives or friends who could care for the child. The Department took the child into custody.

On October 21, 2016, the JDR court entered an emergency removal order. On October 27, 2016, the JDR court adjudicated that the child was abused or neglected, and on December 20, 2016, it entered a dispositional order, which was not appealed.

Once the child entered foster care, the Department learned that the child had been diagnosed with focal epilepsy, esotropia of both eyes, asthma, speech delay, eczema, and developmental delay. The child was not toilet trained and had poor boundaries. He acted out aggressively and used "excessive amounts" of profanity. The child was "extremely defiant" and "often not medication compliant."

In October 2016, the Department sent father a letter and a copy of the initial foster care service plan to notify him that the child had been placed in foster care. The Department required father to notify the social worker when he was released from incarceration. To achieve the goal of relative placement, father would have had to petition the court for custody and comply with the requests of the Interstate Compact on the Placement of Children (ICPC), as well as the Department.

In November 2016, father contacted the Department to inquire about the child. He stated that mother had refused to allow him to have contact with the child and that he had not seen the child in "over a year." He indicated that he wanted to petition for custody. The Department told him to contact the social worker once he was released, and then, they could discuss the steps for petitioning for custody.

In December 2016, the Department sent father an updated foster care plan. Father spoke with the Department and repeated his intention to file for custody upon his release. At a December hearing, the paternal grandmother petitioned for custody of the child.[2] In January 2017, father told the Department that he did not support his mother having custody of the child because he was concerned about "inappropriate behaviors in the home." He expressed a desire for his girlfriend to petition for custody, so the Department mailed her the necessary paperwork. After the January 2017 phone call, the social worker did not hear from father or his girlfriend.

In 2017, the Department had been working with mother toward the goal of return home until a November incident involving mother's boyfriend, which required the Department to alter its plan. In January 2018, the Department notified father about the issues with mother. Father responded by stating that his girlfriend would petition for custody. The Department contacted father's girlfriend and explained the petition process, but she did not file for custody. In February 2018, the Department notified father of the change in the foster care goal from return home to adoption and filed the petition to terminate father's parental rights. Father remained incarcerated in Pennsylvania.

On March 8, 2018, the JDR court terminated father's parental rights and approved the goal of adoption. Father appealed to the circuit court.

---

[2] The paternal grandmother's petition was denied because she did not comply with the ICPC.

On October 17, 2018, the parties appeared before the circuit court.[3] The Department presented evidence that it had not had any contact with father after the JDR court terminated his parental rights. A social worker spoke with father's girlfriend in August 2018, and again, explained to her the process for filing for custody. Father's girlfriend never filed a petition for custody. Although father had reported that his expected release date was in June 2018, the Department learned that his anticipated release date was in February 2019. Father had been moved to several different prisons while the child was in foster care.

The Department presented evidence that the child had improved since he entered foster care. The child made progress with toilet training while in foster care. The child received medical treatment for his seizure disorder and an autoimmune issue. The child had been diagnosed with attention deficit hyperactivity disorder (ADHD), post-traumatic stress disorder, developmental delay, and reactive attachment disorder. The child had "a long list of medications that he [took] daily" for his medical and psychological issues. He received special education services at school and participated in counseling. The child had bonded with his foster parents and responded well to them. He also had bonded with a teenager who lived in the foster home. The Department presented evidence that the child had "thrived" at his foster care placement and "gone well beyond what we could have hoped for him."

At the conclusion of the Department's evidence, father moved to strike, which the circuit court denied. Father testified that he had not seen the child since approximately 2014. Father had been incarcerated since August 18, 2015, and anticipated being released in February 2019; however, there was a possibility that his release date could be later. Upon his release, father planned to live in a house that his sister owned in Philadelphia and work at a meat factory. Father indicated that in less than one month, he had received letters from the Department

---

[3] Father appeared via video conference.

indicating that they were changing the goal from return home to adoption. Father testified that if he had had more time, then he would have asked his sister to file a petition for custody.[4] Father testified that he completed parenting classes while he was incarcerated. He explained to the court that he wanted an opportunity to raise the child.

At the conclusion of all of the evidence and the parties' arguments, the circuit court terminated father's parental rights under Code § 16.1-283(B) and approved the goal of adoption. The circuit court entered the final order on October 29, 2018, and this appeal followed.

ANALYSIS

In our review of a trial court's termination of parental rights, the "trial court is presumed to have thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests." Castillo v. Loudoun Cty. Dep't of Family Servs., 68 Va. App. 547, 558 (2018) (quoting Logan v. Fairfax Cty. Dep't of Human Dev., 13 Va. App. 123, 128 (1991)). "Where, as here, the court hears the evidence *ore tenus*, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it." Fauquier Cty. Dep't of Soc. Servs. v. Ridgeway, 59 Va. App. 185, 190 (2011) (quoting Martin v. Pittsylvania Cty. Dep't of Soc. Servs., 3 Va. App. 15, 20 (1986)).

*Due process*

Father argues that his due process rights were violated because he did not receive sufficient notice of the change in the foster care goal and the Department's plan to terminate his parental rights.

Article I, Section 11 of the Constitution of Virginia provides that, "no person shall be deprived of his life, liberty, or property without due process of law." "Procedural due process

---

[4] Father indicated that his sister had filed the paperwork, but it was returned to her and she never refiled.

guarantees a litigant the right to reasonable notice and a meaningful opportunity to be heard." Etheridge v. Medical Ctr. Hosps., 237 Va. 87, 97 (1989); see also Zedan v. Westheim, 62 Va. App. 39, 53 (2013).

In August 2017, the Department had concurrent goals of return home and relative placement. The Department presented evidence that progress was being made with the goal of return home until it learned about an incident that occurred between the child and mother's boyfriend in November 2017. The Department attempted to work with mother to no avail. At the family partnership meeting on January 8, 2018, the participants discussed "the possibility of a goal change." On January 24, 2018, the Department sent father a letter informing him that "there were issues going on with [mother]." Father responded to the letter and indicated that his girlfriend wanted to seek custody of the child. On February 7, 2018, the Department contacted father's girlfriend and explained the process of filing a petition for custody.

The Department prepared and filed a petition for permanency planning hearing, dated February 5, 2018, and a new foster care plan with the revised goal of adoption. On February 19, 2018, the JDR court clerk's office issued a summons notifying father of the petition for the permanency planning hearing and the upcoming court date of March 8, 2018. On February 8, 2018, the Department filed a petition for the termination of father's parental rights. On February 12, 2018, the Department sent father a letter to inform him that the Department was seeking the termination of his parental rights. On March 2, 2018, the JDR court clerk's office issued notices to inform father of the petition for the termination of his parental rights and the upcoming court date. On March 8, 2018, the JDR court terminated father's parental rights and approved the goal of adoption.

Father asserts that with such short notice of the Department's intention to change the goal to adoption and terminate his parental rights, his due process rights were violated. He contends

that he did not have sufficient time to react or suggest an alternative placement.  Father, though, appealed the JDR court's rulings to the circuit court.  "A party appealing to a circuit court has the right to a *de novo* trial on appeal from 'any final order or judgment of the juvenile court affecting the rights or interests of any person coming within its jurisdiction.'"  Alexander v. Flowers, 51 Va. App. 404, 413 (2008) (quoting Code §§ 16.1-296, 16.1-136).  "A trial *de novo* in the circuit court 'annuls the judgment of the [juvenile court] as completely as if there had been no previous trial . . . and . . . grants to a litigant every advantage which would have been [available to the litigant] had the case been tried originally in [the circuit] court.'"  Id. (quoting Fairfax Cty. Dep't of Family Servs. v. D.N. and S.N., 29 Va. App. 400, 406 (1999) (alteration in original)).  "Once the trial *de novo* commences in the circuit court, the district court *judgment* is annulled, *and is not thereafter available for any purpose*."  Id. at 414 (quoting Turner v. Commonwealth, 49 Va. App. 381, 386 (2007) (emphasis in original)).

When father appeared before the circuit court, the JDR court's ruling had been annulled. At that point, father had approximately eight months' notice of the Department's intention to change the goal to adoption and terminate his parental rights.  We find that father had sufficient notice and that his due process rights were not violated.

*Termination of parental rights*

Father argues that the circuit court erred in terminating his parental rights under Code § 16.1-283(B).  He asserts that the Department did not offer him any services or give him an opportunity to remedy the conditions that led to the child's placement in foster care.  He further contends that the Department did not prove that the termination of his parental rights was in the child's best interests.

Code § 16.1-283(B) states a parent's parental rights may be terminated if:

> 1.  The neglect or abuse suffered by such child presented a serious
>     and substantial threat to his life, health or development; and

- 8 -

2. It is not reasonably likely that the conditions which resulted in such neglect or abuse can be substantially corrected or eliminated so as to allow the child's safe return to his parent or parents within a reasonable period of time. In making this determination, the court shall take into consideration the efforts made to rehabilitate the parent or parents by any public or private social, medical, mental health or other rehabilitative agencies prior to the child's initial placement in foster care.

The JDR court found that the child was abused or neglected, and father did not appeal that finding after the dispositional hearing. Once the court found that the child was abused or neglected, the Department was not required to provide services to father. "Nothing in Code § 16.1-283 or the larger statutory scheme requires that . . . [rehabilitative] services be provided in all cases as a prerequisite to termination under subsection B." Toms v. Hanover Dep't of Soc. Servs., 46 Va. App. 257, 268 (2005); see also Farrell v. Warren Cty. Dep't of Soc. Servs., 59 Va. App. 375, 408-09 (2012).

Furthermore, "subsection B [of Code § 16.1-283] 'speaks prospectively' and requires the circuit court to make a judgment call on the parent's ability, following a finding of neglect or abuse, to substantially remedy the underlying problems." Toms, 46 Va. App. at 270-71 (quoting City of Newport News Dep't of Soc. Servs. v. Winslow, 40 Va. App. 556, 562-63 (2003)). Father testified that he had not seen the child since approximately 2014, and he had been incarcerated the entire time that the child was in foster care. Father's release date was uncertain, but he testified that the earliest date would be in February 2019. Although father testified that he took a parenting class while incarcerated, there was no evidence that he was able to remedy, within a reasonable period of time, the conditions that led to the child's foster care placement. The circuit court found that father had "been locked up or . . . been away from [the child's] life for almost five complete years." The circuit court held that it was not in the child's best interest to "go back to something that he has no knowledge of at this point. He's in a really good place right now."

When the child entered foster care, he had severe developmental delays, behavioral issues, and medical problems, which required medication, medical treatment, and counseling. The child had improved since he entered foster care and had "gone well beyond" what was hoped for him, but still required a great deal of attention and care. The child also had developed a bond with his foster parents and a teenager who lived in the home. "It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his [or her] responsibilities." Tackett v. Arlington Cty. Dep't of Human Servs., 62 Va. App. 296, 322 (2013) (quoting Kaywood v. Halifax Cty. Dep't of Soc. Servs., 10 Va. App. 535, 540 (1990)).

Considering the circumstances, the circuit court did not err in terminating father's parental rights under Code § 16.1-283(B) and finding that the termination was in the child's best interests.

*Adoption*

With respect to father's challenge of the foster care goal of adoption, "[o]ur decision to affirm the termination order necessarily subsumes this aspect of his appeal because a preponderance-of-the-evidence standard governs judicial modifications of foster care plans." Toms, 46 Va. App. at 265 n.3.

CONCLUSION

For the foregoing reasons, the circuit court's ruling is affirmed.

Affirmed.